**James Nelson HINDE and Hinde Engineering Company, Plaintiffs-Appellees.**

v.

**HOT SULPHUR SPRINGS, COLORADO, Defendant-Appellant.**

No. 72-1878.

United States Court of Appeals, Tenth Circuit.

July 19, 1973.

Rehearing Denied Aug. 14, 1973.

William Griffith Edwards, Denver, Colo. (Fred S. Lockwood, Chicago, Ill., of counsel), for appellees.

Herbert A. Shatz, Denver, Colo. (George A. Smith and George A. Smith, Jr., Philadelphia, Pa., of counsel), for appellant.

Before BREITENSTEIN, McWILLIAMS and BARRETT, Circuit Judges

BARRETT, Circuit Judge.

John Nelson Hinde, patentee, and Hinde Engineering Company, exclusive licensee of United States Letters Patent Nos. 3,293,861 ('861) and 3,234,123 ('123), brought this patent infringement suit against the Town of Hot Sulphur Springs, Colorado, (Town), following its installation and operation of a sewage treatment plant. The trial court, 359 F.Supp. 987, sitting without a jury, held that '123 was valid and that the Town, together with its privies, Case/Cotter, Inc., and Schramm, Inc., had deliberately, wilfully, and wantonly infringed Claims 8 and 21 of '123. The Court perpetually enjoined the Town, its officers, and all those under its control or in privity with it, from infringing upon claims 8 and 21 of '123.[1] In addition, an accounting was ordered to ascertain treble damages for infringement.

---

1. Although the Town was the sole named defendant, it has been defended throughout by Schramm, Inc., the supplier of the aeration conduit used in the accused installation, and Case/Cotter, Inc., the subcontractor for the installation. The perpetual injunction was tempered by a proviso allowing the Town to continue to operate its existing sewage treatment facilities.

'123, "Method of and Means for Treating Bodies of Water", was a continuation, in part, of '861, "Method of Distributing Fluids in Bodies of Liquid and Apparatus Therefor". A review of the events surrounding these patents will facilitate our consideration of the issues presented.

Hinde first began experimenting with the concepts of water aeration in 1958 to prevent winter fish kill as a favor to a friend. By utilizing a compressor to pump air through submerged copper tubing with small holes punched therein, he was able to supply oxygen into a small trout pond. It stopped the fish from dying. However, many of the holes became clogged in a short period of time and the bubbles emitted from the tubing were quite large. Thereafter he began experimenting with hoses and rubberlike tubing.

In 1958 Hinde also sent the Kenosha Trout Club in Colorado, polyethylene tubing which he had perforated every five feet with needle holes. Once the Club members had submerged and anchored the tubing, they found that it was not only effective in preventing fish kill, but that it also melted large strips of ice. Encouraged by these reports, Hinde formed his own company.

In the summer of 1959, Hinde sent tubing to the Montague Fish Hatchery in Massachusetts. This tubing had round needle holes and was weighted with taped on lead. Clogging was again a problem and even though he developed a chisel-shaped needle that punched slotted self-closing valves, the mineral content in the water precluded its effectiveness. At this time Hinde also began inquiring as to the availability of tubing with an encapsulated lead keel.

In January, 1960, Hinde installed tubing at the Bauduin Yacht Club to melt ice around a pier. This tubing was perforated with larger needle holes at two feet intervals. Clogging was somewhat of a problem, but having determined that slit holes produced smaller bubbles and did not clog as rapidly as round ones, Hinde sent the Club a "minute knife blade" so that the holes could be repunched and thus converted to slits.

By November, 1960, Hinde was able to obtain tubing with an encapsulated lead keel. He had also developed a die that would put self-closing slit valves in the tubing without widening it as much as the chisel-shaped needle. Having thus developed a tubing which could discharge oxygen in a controlled manner with a minimum of clogging while submerged for extended periods of time, Hinde felt that his tubing would be an economical means for treating sewage. Therefore, in the summer of 1961, he shipped tubing to Butterfield Estates, Illinois, to be installed to handle the waste of a housing development. The tubing was shipped with the understanding that Hinde would be paid if, and only if, the tubing worked. In November, 1961, Hinde shipped tubing to Tinley Heights, Illinois, for another installation under similar terms. In each instance perforated tubing with slit valves and an encapsulated lead keel was installed, and in each instance the installation was successful. A similar installation was made at the United States Industrial Chemical Company at Tuscola, Illinois, during the summer of 1961. By the date of trial Hinde had made over three hundred similar installations in various parts of the country.

On November 13, 1961, Hinde applied for a patent relating to "innovations and improvements in distributing or dispersing fluids into bodies of liquid for various purposes." This application gave rise to '861 and it utilized a perforated flexible weighted tubing which was "provided with a plurality of outlet valves in the form of relatively short self-closing slits oriented substantially lengthwise of the tubing." The uses of the tubing as set forth in the application included aeration of bodies of water to prevent summer and winter fish kill, ice melting, and sewage or industrial waste treatment.

On December 26, 1962, Hinde also applied for a patent relating to "innova-

tions and improvements in the treatment of bodies of water with air or other gas, usually for purification and related benefaction purposes." This application gave rise to the '123 patent. It was a continuation in part of Hinde's pending '861 application. By utilizing a plurality of submerged conduits arranged in a predetermined pattern of the same type as the perforated tubing utilized in '861, '123 was able to release sized bubbles in a controlled manner and thereby produce "upward laminar flows of aerated water."

An important feature of '123 was the creation of hydraulic curtains formed by the upward laminar [2] flow of aerated water above the submerged conduit, creating a series of treatment cells, wherein there is a "horizontal division of a body of water into a lower anaerobic layer which is relatively quiescent and an upper aerobic layer which is nonquiescent by reason of being vertically divided into said hydraulically defined cells."

Claims 1, 8, and 21 of '123 described the process as follows:

1. The method of aerating a body of aqueous liquid which comprises releasing oxygen-containing gas into said body from a plurality of submerged flexible conduits having a narrow row of self-closing slit valves in the upper portions thereof for substantially the full length of each conduit and arranged in a pattern wherein said conduits extend substantially straight and parallel with each other, said oxygen-containing gas being released through said slit valves in bubble form along the length of each conduit in such manner that the diameters of the majority of bubbles do not exceed approximately ⅛ inch so as to produce upward laminar flow of a curtain of aerated liquid above said conduits with each such curtain parting at the surface so as to form downward recirculation of the liquid intermediate each of said curtains whereby said body is divided into a series of parallel hydraulically defined cells, said self-closing slit valves being spaced sufficiently close together in said narrow rows as to release streams of said bubbles which are close enough together to produce said upward laminar flow.

8. The method of claim 1 wherein said body of aqueous liquid is formed by waste water selected from the group consisting of domestic sewage, industrial waste, effluent from an activated sludge treatment plant, and effluent from a trickling filter treatment plant.

21. In a sewage or industrial waste treating lagoon of elongated rectangular shape and uniform depth having an influent inlet at one of the narrow ends and an effluent outlet adjacent the opposite end, means for aerating the body of waste flowing through said lagoon, comprising, a plurality of lengths of weighted flexible tubing having a narrow row of self-closing slit valves in the upper portions thereof for substantially the full length of each conduit and resting on the bottom of said lagoon and arranged in a pattern wherein said lengths are substantially straight and parallel with each other and extend generally transversely to the length of said lagoon, compressed air header means communicating with said lengths of tubing, and compression means, said self-closing slit valves serving to release bubbles the diameters of the majority of which do not exceed ⅛ inch in diameter and said slit valves being spaced sufficiently close together in said narrow rows as to release streams of said bubbles which are close enough together to produce upward laminar flow above each length of conduit.

In April, 1969, Hinde Engineering Company, through its Denver agent, Control Sales Incorporated, submitted a bid for the installation of an aerated ox-

---

2. "Laminar flow" was defined to mean "upward flow with little or no turbulence."

idation pond to the Town's consulting engineers. Thereafter, when it discovered that the Town had installed a system for treating liquid sewage, it filed suit.

Hinde claimed that the Town's engineers used its design in the preparation of the plans and construction of its installation, that the Town's installation operates as Hinde had designed it to operate, and that the principal change was the use of Schramm, Inc.'s tubing rather than its own. Hinde also alleged that the infringement was deliberate, wilful, and wanton. The Town denied infringement and asserted that '123 was invalid and that it had been fraudulently obtained. The trial court upheld the validity of '123 and entered judgment in favor of Hinde.

On appeal the Town sets forth four allegations of error, i. e.: (1) Claims 8 and 21 of '123 are invalid by anticipation under 35 U.S.C.A. § 102 because they are not supported by the disclosure of the application on which '861 is based within the requirements of 35 U.S.C.A. § 120; (2) Claims 8 and 21 of '123 are invalid because of obviousness under 35 U.S.C.A. § 103; (3) Claims 8 and 21 are not sufficiently definite to satisfy the requirements of 35 U.S.C.A. § 112; and (4) the perpetual injunction, which is worded in the language of Claims 8 and 21 of '123, is too vague to be understood.

■■ We observe at the outset that we are not a trial court and that a case cannot be presented de novo on appeal, and further that the findings and conclusions of the trial court must stand unless clearly erroneous. Maloney-Crawford Tank Corporation v. Sauder Tank Company, 465 F.2d 1356 (10th Cir. 1972); Scaramucci v. Dresser Industries, Inc., 427 F.2d 1309 (10th Cir. 1970). The Town's entire appeal is predicated on the invalidity of '123 and the vagueness of the injunction. No challenge is made to the trial court's determination that the Town deliberately, wilfully, and wantonly infringed Claims 8 and 21 of '123.

## I.

The Town contends that Claims 8 and 21 of '123 are invalid by anticipation under 35 U.S.C.A. § 102 because they are not supported by the disclosure of the application on which '861 is based within the requirements of 35 U.S.C.A. § 120. This argument is predicated on the contention that since three installations, (Butterfield Estates, Tinley Heights, and United States Industrial Chemical), embodying the essence of '123, were in public use and on sale more than one year prior to its December 26, 1962, filing date, Claims 8 and 21 are invalid by anticipation because they are not entitled to the benefit of the November 13, 1961 filing date of '861 via 35 U.S.C.A. § 120.

35 U.S.C.A. § 102 provides in part:

A person shall be entitled to a patent unless—

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, or . . .

Section 120 of 35 U.S.C.A. provides:

An application for patent for an invention disclosed in the manner provided by the first paragraph of section 112 of this title in an application previously filed in the United States by the same inventor shall have the same effect, as to such invention, as though filed on the date of the prior application, if filed before the patenting or abandonment of or termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of the first application and if it contains or is amended to contain a specific reference to the earlier filed application.

■ To come within Section 120, the '123 application must: (1) disclose an invention described in the manner pro-

vided in 35 U.S.C.A. § 112 [3] in an earlier application; (2) be by the same inventor; (3) be filed before the patenting of the earlier application; and (4) contain a specific reference to the earlier application. Bendix Corporation v. Balax, Inc., 421 F.2d 809 (7th Cir. 1970), cert. denied 399 U.S. 911, 90 S.Ct. 2203, 26 L.Ed.2d 562 (1970). It is undisputed that the applications were filed by the same person, that the '123 application was filed before a patent was granted for '861, and that the '123 application referred to '861. The sole question is whether '123 was adequately disclosed in accordance with Section 112 in the '861 application.

The trial court, in affording '123 the filing date of '861 held, effectively, that the '861 application contained a written description of '123 in such full, clear, concise and exact terms to enable any person skilled in the art to which it pertains to make and use the same. In this regard, the trial court found:

> Claims 8 and 21 of the '123 patent correspond, as to operation and as to construction, respectively, to Figure 3 of the '861 patent and the pertinent portions of that patent's specifications. In particular, Claim 21 is adequately disclosed in Figure 3 when the aeration equipment shown in Figure 3 is installed in a sewage lagoon typical of that time such as was described by both plaintiffs and defendant's experts.

> Thus Claims 8 and 21 are disclosed in the '861 patent application, and it follows that they are entitled to the benefit of the filing date of November 13, 1961.

■ In making these findings, the trial court relied heavily on the findings of the patent office, the drawings and specifications, the testimony adduced at trial, and the courtroom demonstration. Such a finding represented one of mixed fact and law, which, absent a persuasive proof that it is clearly erroneous, will not be reversed on appeal. Maloney-Crawford Tank Corporation v. Sauder Tank Company, *supra*. See also Refrigeration Patents Corporation v. Stewart-Warner Corporation, 159 F.2d 972 (7th Cir. 1947).

■■ We hold that the trial court did not err in determining that '123 should be afforded the earlier filing date of '861. Since '123 did not disclose any definite subject matter not defined in '861, it is entitled to be afforded the earlier filing date. Application of Van Langenhoven, 458 F.2d 132 (CCPA 1972). Whenever the subject matter of one patent is completely disclosed in a previous application, and it reads on one of the important uses set forth therein, it is entitled to the filing date of the previous application, provided the other conditions of Section 120 are met. Application of Risse, 378 F.2d 948, 54 CCPA 1495 (1967).

■ Even if we doubted the validity of the trial court's determination, which we do not, the Town's own expert, Dr. Fischer, did not challenge or dispute testimony that Claims 8 and 21 could be found in the '861 application. Thus, when the evidence is considered in its totality in specific relationship to the type of disclosure dictated by Section 120 via Section 112, it is clear that the disclosure of the '861 application, along with the prior art, brought '123 within the '861 application, in accordance with the requirements of Section 120.

## II.

The Town contends that Claims 8 and 21 are invalid because of obviousness

---

3. 35 U.S.C.A. § 112 provides in pertinent part as follows:
   The specifications shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

under 35 U.S.C.A. § 103.[4] This argument is based on the theory that the subject matter of Claims 8 and 21 would have been obvious to a person having ordinary skill in the art at the time it was allegedly invented. In support of this contention, the Town argues that had the Patent Office been aware that tubing capable of producing laminar flow already had been in public use at Kenosha, Montague, and Bauduin, and that it was being offered for sale via Hinde's sales brochure, and that had the Patent Office been aware that diffused aeration was suggested to the public by the O'Connor and Eckenfelder article,[5] the Patent Office would have concluded that the subject matter of Claims 8 and 21 was obvious.

■ Although the question of patent validity is one of law for the court to decide, Admiral Corporation v. Zenith Radio Corporation, 296 F.2d 708 (10th Cir. 1961), the issue of obviousness must be resolved on the basis of factual inquiries. Carson v. Bland, 398 F.2d 423 (10th Cir. 1968). The trial court addressed itself to the issue of obviousness in the following manner:

Defendant's final challenge to the validity of the '123 patent is based upon 35 U.S.C.A. § 103, which requires the subject matter covered by the patent application not to have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertains.

Under Section 103, the following three conditions must be satisfied: (1) the scope and content of the prior art are to be determined; (2) differences between the prior art and the claims at issue are to be ascertained; and, (3)

the level of ordinary skill in the pertinent art is to be resolved. Graham v. John Deere Co., 383 U.S. 1, 16 [86 S. Ct. 684, 15 L.Ed.2d 545] (1965). As indicia of obviousness or non-obviousness, such secondary considerations as commercial success, long felt but unsolved needs, and so forth, may be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.

■ Proceeding from this standard, the trial court distinguished the article because it undertook aeration by the utilization of air headers carrying spargers at appropriate places, in an admittedly characteristically turbulent system which does not indicate that treatment cells are formed. The trial court also found that the tubing offered for sale on November 19, 1961, was not in public use or on sale for more than one year before the November 13, 1961 filing date of the '861 patent and that it could not be considered part of the prior art with respect to the claims in the suit. In view of the time period from 1958 to 1960 during which time Hinde was refining his tubing, we hold that the Court did not err.

In summarizing its argument that the claims involved herein were obvious, the Town makes the following observation:

Thus, we submit that there is an inconsistency in the District Court's reasoning with respect to obviousness and anticipation: if the claimed subject matter was unobvious, it is not entitled to the benefit of an earlier filing date and is therefore anticipated; if it is entitled to the benefit of an earlier filing date, then it was obvious. Either way the claims are invalid.

---

4. Section 103 provides:
   A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made

to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

5. "Treatment of Organic Wastes in Aerated Lagoons", Journal of the Water Pollution Control Federation, April, 1960.

If the trial court is to be considered guilty of "faulty logic", we submit that the Town is equally guilty in that it consistently argues that although Claims 8 and 21 could not be anticipated in the '861 application, '123 is invalid because the same claims were obvious. In any event, we are non-plussed by the Town's contention that the District Court used faulty logic herein. To adopt the Town's view would be to endorse the position that Congress did not want anyone to be able to utilize the provisions of Section 120. See Frantz Manufacturing Company v. Phenix Manufacturing Company, 457 F.2d 314 (7th Cir. 1972).

### III.

The Town contends that Claims 8 and 21 are not sufficiently definite to satisfy Section 112, *supra*. The trial court considered this allegation in the following manner:

It should first be noted that great weight must be given to the findings of the Patent Office if they are consistent with the evidence presented at trial. McCullough Tool Company v. Well Surveys, supra; Johns-Manville Corp. v. Ladd [117 U.S.App.D.C. 262], 328 F.2d 563 (D.C.Cir. 1964). A review of the records from the Patent Office reflect that ultimately the Patent Office was satisfied with the precision and clarity of Claims 8 and 21. In addition, the drawings and specifications of the '123 and '861 patents, the testimony adduced at trial, and the courtroom demonstration are persuasive that the defendant failed to sustain its burden of proving either the affirmative defense of invalidity based upon indefiniteness under 35 U.S.C.A. § 112 or the affirmative defense under 35 U.S.C.A. § 102 barring the patenting of an invention that is in public use or on sale more than one year before the date of the patent application.

Claims 8 and 21 of the '123 patent do particularly point out and claim Mr. Hinde's invention, the specifications of both the '123 and the '861 patents contain written descriptions that comply with the requirements of Sections 112, and Claims 8 and 21 of the '123 patent are completely disclosed in the '861 patent.

When, as here, the findings of the Patent Office are reviewed and endorsed by a trial court, we will not reverse on appeal unless clearly erroneous. The trial court did not err.

### IV.

The Town argues that utilization of claim language within the injunction rendered it in violation of Rule 65(d), Fed.R.Civ.P. for lack of specificity. Having reviewed the injunction we hold that it does not violate Rule 65(d). Furthermore, since the Town was expressly allowed to continue to use its sewage treatment facilities, the injunction does not place an undue burden on the Town.

Affirmed.