**TANKS, INC., Plaintiff-Appellee,**

v.

**REITER INDUSTRIES, INC., Defendant-Appellant.**

**No. 75–1647.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted May 20, 1976.

Decided Dec. 8, 1976.

John B. Tittmann, Albuquerque, N. M. (Keleher & McLeod, Albuquerque, N. M., and Edward L. Brown, Jr., Wichita, Kan., on the brief), for plaintiff-appellee.

Jerry W. Mills, Dallas, Tex. (Charles S. Cotropia of Richards, Harris & Medlock, Dallas, Tex., on the brief), for defendant-appellant.

Before McWILLIAMS and BARRETT, Circuit Judges, and STANLEY, Senior District Judge.[*]

McWILLIAMS, Circuit Judge.

This is a patent case. Tanks, Inc., instituted a declaratory judgment action against Reiter Industries, Inc., asking that U. S. Letters Patent No. 3,810,604 issued Reiter be declared invalid. Reiter filed a counterclaim charging Tanks with infringement of claims 6, 7, and 8 of its patent and asking for injunctive relief and damage. Upon trial of the matter the trial court made certain findings of fact and concluded that the patent in question was invalid under both 35 U.S.C. §§ 102 and 103. Reiter now appeals, contending that the several findings of the trial court are clearly erroneous, in every particular, and that the trial court's conclusions based on such findings are legally incorrect. We do not agree. The pertinent findings of the trial court here under attack are set forth in the Appendix to this opinion. Reference thereto at this point may give the reader instant insight into the controversy.

Milk is commonly hauled to milk collection and processing plants by over-the-road tankers having stainless steel milk tanks. Such tanks must be thoroughly washed after carrying milk and inspections are frequently made by various local and state health agencies to make certain that the interior of the tanks is maintained in a sanitary manner at all times. It is also necessary from time to time to sample and test the milk while in transit, and in order to insure a fair sampling the milk must be agitated.

Down through the years various means have been used to agitate the milk while in the tanker truck, and to clean the tanker after the milk has been removed. Usually the same apparatus is used to perform both functions. Many of these systems have utilized pipes, or similar hardware with holes punched therein. To agitate the milk, air would be introduced into the pipe under pressure, and escape through the various orifices in the pipe. To clean the empty tank, a cleaning solution would be introduced into the pipe under pressure, and would spray out through the holes, thereby washing down the walls of the tank.

Reiter received its patent for its device in 1973. Prior thereto, milk tankers had at one time been cleaned by a so-called "spray ball" unit, a spherical, perforated piece of hardware affixed to a single pipe. Cleaning fluid was thus introduced into the pipe,

* Of the United States District Court of the District of Kansas, sitting by designation.

and sprayed from the perforations in the ball, thereby washing down the walls. Such "spray ball" unit was generally of the "drop in" type, which was lowered into the tank through the manhole in the top of the tank. Later, as the capacity of tanks increased, there was developed a "double spray ball" unit, which, as the name indicates, consisted of two "spray balls" which were mounted at the ends of an inverted "T" shaped pipe. These units were on occasion permanently mounted inside the tanks.

Another method for cleaning the walls of a tanker truck was to insert a pipe through the rear bulkhead which would then run the length of the tanker. The pipe was perforated and the cleaning fluid would be forced into the pipe and sprayed out of the perforations therein. Such a system was permanent as the pipe was welded into the rear bulkhead.

The device for which Reiter was issued a patent in 1973 also made use of pipe with holes stamped therein. Reiter's device consisted of a pipe that ran the length of the tanker, and though removable, was affixed to the bottom of the tank by clamp supports which were welded to the bottom of the tank. A vertical pipe extended from an opening in the top of the tank, joining the horizontal pipe at its middle, forming an inverted "T". Again, air, or fluid was forced into the top of the vertical pipe, and sprayed out through the series of apertures in the horizontal pipe.

Tanks, Inc., the plaintiff, later created a device for aerating and cleaning tanker trucks which we will assume infringed on Reiter's patent, and more particularly, claims 6, 7 and 8 contained therein. Prior thereto there were discussions between Tanks and Reiter with the view of possibly issuing a license to Tanks. When such discussions failed, Tanks went ahead and developed its own cleaning mechanism, and then brought the present declaratory judgment action seeking to have Reiter's patent declared invalid. Reiter filed a counterclaim for infringement, seeking injunctive relief and money damages.

Upon trial of this matter to the court, Reiter proceeded first to establish the issuance of the patent and Tanks' infringement thereon. Then Tanks put on its evidence bearing on the issue of the validity of the patent. Although the trial court did not, insofar as we can tell from a reading of its order, specifically find that there was an infringement, such was nonetheless implicit therein, and we proceed on the premise that Tanks had infringed on Reiter's patent. As indicated, after trial, the trial court held that Reiter's patent was invalid under the provisions of both 35 U.S.C. §§ 102 and 103.

In its brief, Reiter asks that we review the evidence and then render a decision on what it says is the central issue in the case, namely: Was the Reiter patent obvious at the time it was made to one having ordinary skill in the pertinent art? We agree that such is the main issue in the case, and accordingly, shall first consider § 103. Section 103 provides as follows:

§ 103. *Conditions for patentability; non-obvious subject matter*

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

He who would obtain a patent must comply with 35 U.S.C. §§ 101, 102, and 103. However, even though there be compliance with §§ 101 and 102, under the provisions of § 103 a patent still may not be obtained if from the prior art the subject matter sought to be patented would be obvious to a person of ordinary skill in the art to which the subject matter pertains. In this regard the test for obviousness was set forth in *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), as follows:

While the ultimate question of patent validity is one of law, *A. & P. Tea Co. v. Supermarket Corp. supra,* [340 U.S. 147] at 155, [71 S.Ct. 127, at 131, 95 L.Ed. 162] the § 103 condition, which is but one of three conditions, each of which must be satisfied, lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined.

■ As indicated, the trial court found, *inter alia,* that Reiter's patent was invalid under § 103 in that its subject matter was obvious from the prior art. The trial court's findings relating to the scope of the prior art, the difference between the prior art and the claims of the patent whose validity is being questioned, and the level of the ordinary skill in the art, all issues of fact, were perhaps not spelled out in the explicit terms used in *Graham.* However, we have held that the failure by a trial court to use the precise language used in *Graham* is not fatal and that findings of a trial court would be accepted if it were clear from such findings that the trial court had "grappled with the problems." *Rutter v. Williams,* 541 F.2d 878 (10th Cir. 1976) and *Price v. Lake Sales Supply R.M., Inc.,* 510 F.2d 388 (10th Cir. 1974).

■ Our study of the record leads us to conclude that the trial court's several findings of fact relating to prior art and the subject matter of Reiter's claimed invention are not clearly erroneous, and further, that its conclusion that Reiter's claimed invention would be obvious to one possessed of ordinary skill in the art is under the circumstances legally correct.

All systems for aerating milk in a tanker truck, and thereafter cleaning the tank when it has been emptied, make use of pipe or similar hardware with holes punched in it. The prior art on the subject, as indicated, consisted of inserting a pipe with a spray ball on it down through the top of the tanker and then forcing cleaning fluid through the pipe thereby spraying fluid out of the holes and thus washing down the walls. A double spray ball unit was on occasion affixed permanently inside the tank. Prior art also included a fixed pipe through the rear bulkhead of the tanker and running the length of the tanker, with air, or cleaning fluid, being pumped into the pipe and then sprayed from the pipe through numerous small holes stamped in the pipe.

At the heart of Reiter's device was the pipe with holes in it, which was certainly revealed by prior art. Like the trial court, from the record before us, we too conclude that based on prior art, Reiter's cleaning device was obvious to one possessed with ordinary skill in the field. And the fact that Reiter's cleaning device possessed certain draining features, or that it was removable, does not defeat a finding of obviousness, even assuming such was not present in the prior art.

*Sakraida v. Ag Pro, Inc.,* 425 U.S. 273, 96 S.Ct. 1532, 47 L.Ed.2d 784 (1976), has particular applicability to the present case. The patent there involved a water flush system to remove cow manure from the floor of a dairy barn. The trial court in *Sakraida* held that the patent was invalid under § 103 because of obviousness. The Circuit Court on appeal reversed the trial court and held the patent valid on the basis that the water flush system was nonobvious under prior art. On certiorari the Supreme Court reversed the Circuit Court and concluded that the nonobviousness test of § 103 had not been met. We see considerable parallel between a water flush system for washing the floors of a dairy barn and a device consisting of a perforated pipe which sprays out water to wash down the interior walls of a milk tanker. Unlike the Supreme Court in *Sakraida,* we do not have Greek mythology to fall back on in the form of Hercules cleaning out the Aegean stables by diverting a stream through the stables. Nevertheless, the concept of a sprinkling system consisting of pipe or similar hard-

ware with water spraying out of the holes in the pipe is certainly not of recent origin.

Having concluded that the test of § 103 was not met, we need not here go further and consider § 102. Secondary matters raised here by Reiter, such as the fact that the trial court adopted Tanks' proposed findings of fact, rather than those tendered by Reiter, and that the trial court refused to receive certain testimony sought to be elicited from a patent attorney who was called as a witness by Reiter, are without merit.

Judgment affirmed.

### APPENDIX

\*    \*    \*    \*    \*    \* .

6. The subject matter of the Reiter patent in suit is a cleaning and air agitating system for tanker trucks for carrying food, and particularly for carrying milk. The function of the system is to bubble air through the milk in order to evenly mix the milk prior to sampling, and also to spray cleaning fluid against the interior of the tank in order to clean the tank after the milk has been pumped therefrom.

7. The concept of using a cleaning in place (hereinafter C.I.P.) washing system for the dual function of air agitating milk was well known in the prior art more than one year prior to the Reiter filing date; as specifically taught in Tepco, Expert Dairy, 1959 Klenzade catalog and 1967 G&H products catalog.

8. The concept of stationary mounting brackets in a C.I.P. system which can be removably attached to a distribution pipe was well known in the prior art more than one year prior to the Reiter filing date; as specifically taught in Tepco, Cub Beverage, Expert Dairy and Pickerington.

9. The concept of self draining means in a distribution pipe of a C.I.P. system was well known in the prior art more than one year prior to the Reiter filing date; as specifically taught in Tepco, Cub Beverage, Pickerington, Expert Dairy and 3A–Standards.

10. The concept of utilizing a distribution pipe in removable sections was well known in the prior art more than one year prior to the Reiter filing date; as specifically taught by Tepco, Cub Beverage and Pickerington.

11. The concept of loose fitting self-flushing pinned joints has been well known in the prior art more than one year prior to filing date of the Reiter patent; as specifically taught in Tepco, Cub Beverage and 1967 G&H catalog.

12. The concept of a C.I.P. system with a horizontal distribution pipe supplied at the center through a "T" and a vertical pipe setting through the top of the tank has been well known in the prior art more than one year prior to the Reiter filing date; as specifically taught in Pickerington, Expert Dairy, the 1967 G&H catalog and the 1959 Klenzade catalog.

13. The Logemann testimony established that the concept of utilizing loose fitting caps over the ends of a distribution pipe in a C.I.P. system to close the pipe would have been obvious at the time to a person having ordinary skill in the art.

14. All of the physical elements called for in the Reiter patent are old in the plumbing art.

15. In the Reiter arrangement, all of the physical elements perform the same physical functions they have always performed, and none of them perform any new or different function or produce any new or different result than they always have when used individually.

16. The materials and their arrangements do not materially differ from what was previously known and used, and any such difference was obvious.

17. The Reiter system consists of nothing more than a combination of ideas drawn from the existing fund of public knowledge.