NORFIN, INCORPORATED, Plaintiff,

v.

INTERNATIONAL BUSINESS MACHINE CORPORATION, Defendant.

Civ. A. No. 76–F–293.

United States District Court, D. Colorado.

June 13, 1978.

See also 74 F.R.D. 529.

---

James W. Buchanan, III, Hutchinson, Black, Hill, Buchanan & Cook, Boulder, Colo., Granger Cook, Jr., Cook, Wetzel & Egan Ltd., Chicago, Ill., for plaintiff.

Donald C. McKinlay, Holme, Roberts & Owen, Denver, Colo., William K. Kerr, Fish & Neave, New York City, for defendant.

MEMORANDUM OPINION AND ORDER

SHERMAN G. FINESILVER, District Judge.

In a jury trial Norfin, Incorporated [Norfin] prevailed on its claim of patent infringement against defendant, International Business Machine Corporation [IBM]. The patent item is a collator which is attached to a photocopy or other reproduction machine and automatically sorts and assembles into bins successive pages of text as they come off the duplication machine. In the action, plaintiff contends that its patent (number 3,414,254) was infringed by IBM when IBM marketed its own collator. Defendant IBM denies both validity of the patent and infringement.

The jury returned an unanimous special verdict in which it found that (1) defendant infringed plaintiff's patent, (2) the infringement was willful and deliberate, (3) plaintiff's patented device was not on sale or in public use more than one year prior to the date of the patent application, and (4) the patent claims would not have been obvious to a person having ordinary skill in the pertinent art. The question of damages was not before the jury in this bifurcated action. *See* Fed.R.Civ.P. 42(b).

We now rule on IBM's motions for judgment notwithstanding the verdict, or in the alternative, for a new trial. Errors alleged by IBM can be divided into three categories: (1) obviousness is an issue of law to be determined by the court not the jury; (2) the evidence presented does not support

several special verdicts; and (3) certain of the court's instructions misstated the law.

The court denies the motions for judgment notwithstanding the verdict and the motions for a new trial.

I

Section 103 of Title 35, United States Code provides:

A patent may not be obtained . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. .

Thus, a patent may not be obtained if the "invention" was obvious. A patent previously granted may be found to be invalid if it is determined that the invention was obvious. In patent infringement suits, obviousness is a traditional defense to the assertion of infringement.

At question here is whether the issue of obviousness is to be determined by the jury, by the court, or whether the determination is a shared responsibility. The question is of rising importance since, following the Supreme Court's decisions in *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966) and *United States v. Adams*, 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966), there appears to be "a resurrection of jury trials in patent cases." Zarley, *Jury Trial in Patent Litigation*, 4 Patent L.Rev. 89 (1972) [reprinted from 20 Drake U.L.Rev. 243. (1971)].

The original patent act of 1790 provided for trial by jury when it reserved a plaintiff's recovery to "such damages as shall be assessed by a jury." Act of April 10, 1790, Ch. 7 § 4, 1 Stat. 109. Trial to a jury was the exclusive procedure (unless voluntarily waived) until 1819 when Congress allowed patent cases to be "tried in equity" by the court. Medlock, *The Patent Jury Trial* in *Patent Trademark and Litigation Institute* (Amer. Patent Law Assoc. 1978). Since that time jury trials in patent cases became infrequent and a body of case law developed predicated on the determination of all questions of fact and law by the court. The extent to which case law that developed as a result of trials to the court is translatable into jury instructions is at question here.

There is no disagreement between the parties that the ultimate question of patent validity is a question of law. *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966) [1]; *Hinde v. Hot Sulphur Springs, Colorado*, 482 F.2d 829 (10th Cir. 1973); *Admiral Corp. v. Zenith Radio Corp.*, 296 F.2d 708 (10th Cir. 1961). There is also no disagreement that to be valid a patent cannot be obvious. 35 U.S.C. § 103.[2] Nor is there any disagreement that the question of obviousness "lends itself to several basic factual inquiries," such as (1) the scope and content of the prior art, (2) the differences between the prior art and the claims at issue, and (3) the level of ordinary skill in the pertinent art. *Graham, supra* at 17; *Tanks v. Reiter Indus., Inc.*, 545 F.2d 1276 (10th Cir. 1976); *Halliburton Co. v. Dow Chemical Co.*, 514 F.2d 372 (10th Cir. 1975); *Hinde, supra*. The disagreement between the parties lies between the factual (that is, jury) inquiries involved and the legal conclusion concerning validity, *i. e.* is *obviousness* itself a matter of law or a matter of fact? Should *obviousness* itself, in addition to its factual underpinnings, be decided by the jury or reserved for decision by the court?

In this case the court informed the jury, through a series of instructions, of the fac-

---

1. In *Graham v. John Deere* the court rested its conclusion that validity was a question of law on *Great A. & P. Tea Co. v. Supermarket Equipment Corp.*, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950). At least one commentator has stated that this reliance was misplaced and "Prior to the 1966 Supreme Court cases, the issue of validity was broadly deemed by the Court to be an ultimate face triable to a jury." Zarley, *supra*, 4 Patent L.Rev. at 97.

2. Additionally, to be valid the invention must satisfy the statutory requirements of novelty and utility. 35 U.S.C. §§ 101, 102.

tual inquiries required by them. (The main instruction in the series is attached as Appendix A to this opinion.) Thereafter, a special verdict form containing twelve questions was submitted to the jury. (The special verdict is attached as Appendix B.) In questions 10, 11 and 12 the jury was asked, and answered, as follows:

QUESTION NO. 10: Do you find by a preponderance of the evidence that the prior art which should have been considered on the issue of obviousness was not considered by the Patent Office during its examination of the application for the '254 patent?

ANSWER NO. 10: _NO_

QUESTION NO. 11: If you answer Yes to Question No. 10, then answer this question. If your answer to Question No. 10 is No, ignore this Question and answer Question No. 12.

Do you find by a preponderance of the evidence that the differences between the subject matter of each of the asserted patent claims (1, 2, 8, 9, and 10 of the '254 patent) and the prior art are such that the subject matter of such claims as a whole would have been obvious at the time of the '254 invention was made to a person having ordinary skill in the pertinent art? ANSWER NO. 11: [no answer given]

QUESTION NO. 12: Answer this question only if you answered No to Question No. 10.

Do you find by clear and convincing evidence that the differences between the subject matter of each of the asserted patent claims (1, 2, 8, 9, and 10 of the '254 patent) and the prior art are such that the subject matter of such claims as a whole would have been obvious at the time the '254 invention was made to a person having ordinary skill in the pertinent art?

ANSWER NO. 12: _NO_

IBM contends that the issue of obviousness is an issue of law and should not have been submitted to the jury. Accordingly, it is argued that special verdict questions 10, 11 and 12 were error and are grounds for a new trial. It is important to trace the path of law that supports or rejects IBM's contentions. In *Sakraida v. Ag Pro, Inc.*, 425 U.S. 273, 280, 96 S.Ct. 1532, 1536, 47 L.Ed.2d 784 (1976) the Supreme Court appears to equate validity and obviousness:

The ultimate test of patent *validity* is one of law, *Great A. & P. Tea Co. v. Supermarket Corp.*, 340 U.S. 147, 155, [71 S.Ct. 127, 131, 95 L.Ed. 162, 168,] (1950), but [a] resolution of the *obviousness* issue necessarily entails several basic factual inquiries, *Graham v. John Deere Co.* (emphasis added)

Cases decided by the United States Court of Appeals for the Tenth Circuit since *Sakraida* have, in some instances, followed this juxtaposition of legal validity and obviousness. In *Rutter v. Williams*, 541 F.2d 878, 881 (10th Cir. 1976) it was noted that:

An appellate court is bound by the trial court's *findings of fact* relating to obviousness unless they are rejected under the clearly erroneous rule. . . . We are not bound by its *conclusion of law* that the Rutter device was not obvious to one skilled in the art. (emphasis added)

Similarly, in *Tanks v. Reiter Industries, Inc.*, 545 F.2d 1276, 1279 (10th Cir. 1976) it was observed:

Our study of the record leads us to conclude that the trial court's several *findings of fact* relating to prior art and the subject matter of Reiter's claimed invention are not clearly erroneous, and further, that its *conclusion* that Reiter's claimed invention would be obvious to one possessed of ordinary skill in the art is under the circumstances *legally correct.* (emphasis added)

Thus, *Sakraida, Rutter* and *Tanks*, all involving non-jury trials, appear to treat obviousness as an ultimate issue of law which is founded on factual inquiries. These cases must be harmonized with *Graham v. John Deere Co., supra* which held that factual inquiries require an analysis of the prior art, the difference between the prior art and the claims in the patent and the level of ordinary skill in the pertinent art. In the case at bar, the court instructed the jury

that they were to make those comparisons in their deliberations. In our special verdict form we sought only the results of those comparisons. The court did not inquire into the jury's deliberations concerning those factual inquiries.[3]

We cannot take literally case law which loosely equates obviousness with the legal question of validity. When specific attention has been directed to the legal or factual nature of obviousness, the Tenth Circuit Court of Appeals has held that obviousness is a factual question properly presented to the jury.

The Tenth Circuit has addressed the obviousness issue in a jury trial in only two cases since the Supreme Court's *Graham v. John Deere* decision. In *Moore v. Shultz*, 491 F.2d 294 (10th Cir.), *cert. denied*, 419 U.S. 930, 95 S.Ct. 203, 42 L.Ed.2d 161 (1974) the question arose in the context of a motion to disqualify the trial judge. The special verdict question presented to the jury in *Moore* closely parallels that which was submitted in this case:

> (2) Do you find from clear and convincing evidence that the difference between the subject matter of the claim in issue of the patent in suit and the prior art are such that the subject matter thereof as a whole would have been obvious at the time the alleged invention thereof was made to a person having ordinary skill in the art to which said subject matter pertains?

*Moore v. Shultz, supra* at 297. During the jury trial, the judge informed counsel that he was not going to be controlled by the jury's answers to the special verdict. This

and other allegations resulted in a motion to disqualify. On the appeal the plaintiff contended that the denial of the motion constituted error.

In analyzing the question, the Court of Appeals focused on whether obviousness was an issue for the court or jury. The court noted that while validity was a conclusion of law it was premised on three components: novelty, utility and non-obviousness. Novelty and utility presented issues of fact. Some confusion was noted, however, on the obviousness issue. The court observed that "Although the Fifth and Ninth Circuits have taken a different view, we have held those observations to mean that non-obviousness is itself a factual question. [citations]." The guidance which the court gave in that sentence was clouded in the next sentence: "Thus, within the Tenth Circuit novelty, utility and non-obviousness are held to require factual determinations." 491 F.2d at 300. The contention raised by IBM is again placed in dispute by the final sentence. Validity is a question of law which requires factual determinations. The Court of Appeals says that obviousness requires factual determinations. But is obviousness itself a question of law (like validity) or fact (like novelty and utility)?

*Celebrity, Inc. v. A & B Instrument Co.*, 573 F.2d 11 (10th Cir. 1978) provides an unequivocal answer. In *Celebrity* the trial court properly instructed the jury on obviousness and submitted the following for jury resolution: "The patent is valid, not anticipated or obvious in view of the prior art. (Yes or No) *Yes*." *Appendix* at 233. On appeal plaintiff asserted that the validi-

---

**3.** Defendant's initial approach to this facet of the case was to suggest that the court ask the jury for certain narrative answers in the special verdict form with respect to the state of the prior art and the level of skill in the pertinent art. *See IBM's Proposed Questions to the Jury*, filed March 15, 1978. Interestingly, the narrative answers were required in IBM's proposal only if the jury answered the following "ultimate" question in the negative: "Is the Norfin patent invalid because the difference between the . . . Norfin patent . . . and the prior art are such that the . . . Norfin patent would have been obvious at the time of

the invention was made to a person have ordinary skill in the art of collator design." IBM's proposed question should be compared with special verdict question 12 which was submitted to the jury.

Narrative answers describing a jury's deliberations are somewhat foreign to the concept of a general verdict which the court could have required. To include narratives in a special verdict form (which is intended to *simplify* the jury's work by directing their inquiry to specific pivotal issues) would be to require the jury to provide written findings of fact—something which this court will not do.

ty issue was improperly submitted to the jury and the Court of Appeals agreed. It found, however, no reversible error because the court made an independent conclusion of validity. The court then stated:

> In a series of cases based for the most part on *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545, we have held that at least some of the elements [of validity] to include anticipation, obviousness, and novelty are fact questions, although the ultimate issue of validity is a question of law. [citations] The same considerations apply to a design patent such as the one before us. *We conclude that the appropriate division was here made between the function of the jury and of the judge.* (emphasis added)

573 F.2d at 13. What is important in *Celebrity* is that while the trial court made an independent conclusion of validity nothing is said about an independent determination of non-obviousness. This was left to the jury. The Court of Appeals considered that to be an appropriate division of functions of the judge and jury.

█ In the case at bar, the same division of functions was accomplished. The jury decided the question of obviousness as a question of fact, the court reserving any conclusion of validity to itself.[4] There was no error in the court's procedure and IBM is not entitled to a new trial on this issue.

## II

IBM next contends that the evidence presented does not support several of the answers given by the jury in the special verdict. On that basis IBM asks for a new trial. IBM also argues that on many of these issues the evidence leads to only one reasonable conclusion: that the patent is invalid, or even if valid and infringed, there is no evidence to support a finding of willful and deliberate infringement. On this basis IBM asks this court to enter a judgment notwithstanding the verdict.

At the conclusion of Norfin's case-in-chief this court denied a motion for directed verdict under Rule 50 of the Federal Rules of Civil Procedure. At that time the evidence presented by Norfin and the presumption of validity surrounding the patent were more than sufficient to overcome the motion. The evidence was not, seen in a light most favorable to Norfin, so overwhelming in favor of IBM as to require this court to set aside a contrary verdict. *New Mexico Savings & L. Ass'n v. United States Fidelity & G. Co.*, 454 F.2d 328 (10th Cir. 1972); 5A *Moore's Federal Practice* 50.02[1] (1977).

█ The motion was renewed at the close of all the evidence in the trial. Again the motion was denied. IBM now seeks a judgment notwithstanding the verdict. The standard for a JNOV is similar to a motion for a directed verdict. In another patent jury trial case, *Moore v. Shultz, supra,* the court stated that neither a JNOV nor a directed verdict can be granted "unless the evidence points all one way, and is susceptible of no reasonable inferences which sustain the position of the party against whom the motion is directed." 491 F.2d at 298. IBM cannot meet this burden. After having observed the entire trial, the transcript of testimony and the exhibits, the court is satisfied that there is sufficient evidence to support the verdict.

The '254 invention was not obvious. The '254 patent is not simply a straight-forward assemblage of old teachings as asserted by IBM. Rather, the '254 combination patent discloses teachings not evident in the prior art and the combination has produced a truly synergistic result.

█ Section 102 of Title 35 provides that a person shall be entitled to a patent unless "the invention was . . . in public use or on sale in this country, more than one year prior to the date of the application for patent . . ." Experimental use of the invention is an exception to the public use rule. "Use of the inven-

---

**4.** If it were necessary for the court to determine obviousness as a matter of law, which it is not, we would have arrived at the same conclusion. Given the proper legal standard in light of the evidence in the case the Norfin/Snellman '254 invention was not obvious.

tion by or under the control of the inventor in order to perfect the invention, to determine whether it is complete or requires modification or change, is not the public use defined in the statute." 2 *Deller's Walker on Patents* § 145 (1964). Experimental use is not public use if it is conducted in good faith for the purposes of testing the invention and for no other purpose not *naturally* incidental to the experimental purpose. *Beedle v. Bennett*, 122 U.S. 71, 7 S.Ct. 1090, 30 L.Ed. 1074 (1887); *Moraine Prods., Inc. v. Block Drug Co.*, 318 F.Supp. 1064 (N.D. Ill.1967); *Deller's Walker on Patents, supra* at § 145. An experimental use need not be a secret use. *Elizabeth v. American Nicholson Pavement Co.*, 97 U.S. 126, 24 L.Ed. 1000 (1877). In the instant case the jury found that the subject matter of the '254 patent was embodied in a collator sent to the Lockheed Company more than one year before the patent application. The jury further found that the collator was sent to Lockheed for Norfin's experimental purposes. Testimony by way of deposition read to the jury lends support to this conclusion. William R. Freudiger, a reproduction supervisor with Lockheed stated that Lockheed received "a prototype or bread board of a new collator on the boards, and they were to become available if this one passed all its field tests. . . ." (Tr. at 922–923). The jury could have properly inferred that the field tests were for an experimental purpose. This court cannot say that "the evidence points all one way, and is susceptible of no reasonable inferences which sustain the position of the party against whom the motion is directed." *Moore v. Shultz, supra* at 298. IBM is not entitled to a JNOV or new trial on this issue.

■ Finally, IBM contends that there is no evidence from which the jury could have found infringement or willful and deliberate infringement. This is simply not the case. Evidence of infringement was legion and need not be recounted here. The jury's finding that the infringement was willful and deliberate is supported, among other things, by evidence that IBM knew of the Norfin collator before marketing its own and had house counsel investigate any legal complications arising from the marketing of the IBM device.

## III

■ IBM argues for a new trial because of the exclusion from evidence of certain exhibits. The excluded exhibits are the written opinions of IBM patent attorneys in which defendant was given legal opinions that its collator did not infringe on Norfin's '254 patent. An IBM patent attorney testified at length concerning defendant's legal inquiry into potential infringement of the '254 patent. *See Transcripts* at 980 to 1025. The information contained in the exhibits was merely cumulative of the live testimony and was excluded under Rule 403 of the Federal Rules of Evidence. Given the complexity of the lawsuit and number of exhibits presented to the jury, the court in its discretion saw little probative value to these exhibits. Probative value which did exist was outweighed by the potential for confusion of issues, waste of time and needless presentation of cumulative evidence.

■ Finally, it is argued that the court erred in several of its instructions. This contention is rejected.

## IV

■ Having reviewed the jury's findings of fact and the arguments presented in the motions now before the court, the court concludes that the '254 patent is valid. The various motions before the court individually and in their totality are denied.

## APPENDIX A

### INSTRUCTION NO. 21

There are several statutory requirements for a valid patent. The patented product or process must, of course, be new and useful. But simply because someone may have been the first to build or develop something does not mean he or she is entitled to a valid patent. Even an advance which is new and useful is not worthy of a patent if it is such

an advance as requires no more than the ordinary skill in the art. A patent thus is not a valid patent and may not be enforced if the subject matter of the patent as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the pertinent art. This is the test embodied in the patent statutes.

The test of obviousness to be applied by the jury in considering the validity of each of the claims of the patent here in issue is to determine if "the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time. the invention was made to a person having ordinary skill in the art to which subject matter pertains."

As an indicia of obviousness or non-obviousness, consideration must be given to such factual inquiries as:

1. Scope and content of the prior art;

2. Differences between the prior art and the claims at issue;

3. The level of ordinary skill in the pertinent art.

To determine the scope and content of the prior art, you should take into account the prior art and the testimony explaining it.

To determine the differences between the prior art and the claims of the patent in issue, you should compare the prior art with the claims of the '254 patent. You may take into consideration any testimony directed to that comparison.

To determine the level of ordinary skill in the art, you should take into account any testimony concerning that skill.

In addition, such secondary considerations as commercial success, or lack thereof; long felt but unresolved needs; failure of others and other similar facts might be utilized by the jury to reflect light upon the circumstances surrounding the origin of the subject matter sought to be patented.

Inquiry into these secondary considerations is relevant to the issue of obviousness, but not determinative thereof apart from the three basic factual inquiries mentioned above.

The law requires you to make each of the above determinations as of the time the Snellman invention was made, not as of any later time and particularly not as of the present time. The law, in other words, prohibits you from using "hindsight" or after-the-fact considerations.

## APPENDIX B

### SPECIAL VERDICT

We, the jury, present our Answers to Questions submitted by the Court, to which we have unanimously agreed.

Before answering these questions, we have unanimously agreed upon the answer to each of the questions.

### INFRINGEMENT ISSUE

QUESTION NO. 1: Do you find by a preponderance of the evidence that the Defendant has infringed Claim 1 of the '254 Snellman Patent?

ANSWER NO. 1: _YES_ (Yes or No)

QUESTION NO. 2: Do you find by a preponderance of the evidence that Defendant has infringed Claim 2 of the '254 Snellman Patent?

ANSWER NO. 2: _YES_ (Yes or No)

QUESTION NO. 3: Do you find by a preponderance of the evidence that the Defendant has infringed Claim 8 of the '254 Snellman Patent?

ANSWER NO. 3: _YES_ (Yes or No)

QUESTION NO. 4: Do you find by a preponderance of the evidence that .the Defendant has infringed Claim 9 of the '254 Snellman Patent?

ANSWER NO. 4: _YES_ (Yes or No)

QUESTION NO. 5: Do you find by a preponderance of the evidence that the Defendant has infringed Claim 10 of the '254 Snellman Patent?

ANSWER NO. 5: _YES_ (Yes or No)

## WILLFUL AND DELIBERATE INFRINGEMENT ISSUE

QUESTION NO. 6: If the Answer to any one of the first five interrogatories above is yes, do you find by clear and convincing evidence that the Defendant's infringement of the '254 Snellman Patent was willful and deliberate?

ANSWER NO. 6: __YES__ (Yes or No)

## PUBLIC USE AND ON SALE ISSUE

QUESTION NO. 7: Do you find by clear and convincing evidence that the subject matter of either Claims 1, 2, 8, 9 or 10 of the '254 Snellman Patent was embodied in the collator sent to the Lockheed Company in December, 1964?

ANSWER NO. 7: __YES__ (Yes or No)

QUESTION NO. 8: Do you find by clear and convincing evidence that the Norfin collator shipped to Lockheed in December 1964, was used for Norfin's experimental purposes?

ANSWER NO. 8: __YES__ (Yes or No)

QUESTION NO. 9: Do you find by clear and convincing evidence that a collator defined by any of Claims 1, 2, 8, 9, and 10 of the '254 Snellman Patent was in public use (not Norfin's experimental use) or on sale more than one year prior to January 17, 1966?

ANSWER NO. 9: __NO__ (Yes or No)

## OBVIOUSNESS ISSUES

QUESTION NO. 10: Do you find by a preponderance of the evidence that prior art which should have been considered on the issue of obviousness was not considered by the Patent Office during its examination of the application for the '254 patent?

ANSWER NO. 10: __NO__ (Yes or No)

QUESTION NO. 11:

If you answer Yes to Question No. 10, then answer this question. If your answer to Question No. 10 is No, ignore this Question and answer Question No. 12.

Do you find by a preponderance of the evidence that the differences between the subject matter of each of the asserted patent claims (1, 2, 8, 9, and 10 of the '254 patent) and the prior art are such that the subject matter of such claims as a whole would have been obvious at the time of the '254 invention was made to a person having ordinary skill in the pertinent art?

ANSWER NO. 11: Answer Yes or No for each claim.

Claim 1 _____
Claim 2 _____
Claim 8 _____
Claim 9 _____
Claim 10 _____

QUESTION NO. 12: Answer this question only if you answered No to Question No. 10.

Do you find by clear and convincing evidence that the differences between the subject matter of each of the asserted patent claims (1, 2, 8, 9, and 10 of the '254 patent) and the prior art are such that the subject matter of such claims as a whole would have been obvious at the time the '254 invention was made to a person having ordinary skill in the pertinent art?

ANSWER NO. 12: Answer Yes or No for each claim.

CLAIM 1 __NO__
CLAIM 2 __NO__
CLAIM 8 __NO__
CLAIM 9 __NO__
CLAIM 10 __NO__