**Application of Adrien J. HOTTE.**
**Patent Appeal No. 8852.**

United States Court of Customs and Patent Appeals.
March 29, 1973.

Walter S. Zebrowski, Big Flats, N. Y., attorney of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents; Jere W. Sears, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Judges, and WATSON, Judge, United States Customs Court, sitting by designation.

MARKEY, Chief Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 1–7 of appellant's application entitled "Electrical Capacitor and Method," Serial No. 688,556, filed December 6, 1967, as unpatentable over the prior art (35 U.S.C. § 103).

## THE INVENTION

Appellant's invention relates to a method of simultaneously manufacturing a plurality of electrical capacitors and to the capacitors produced thereby. Figs. 1 and 5 illustrate the method and the product:

Fig. 1

Fig. 5

In Fig. 1, a glass film 10 separates a plurality of electrically conductive plate elements which comprise end portions of the teeth 16 and 18 of comb-like structures 12 and 14. Glass covers 20 and 22 complete the stacked unit. The unit is subjected to heat and pressure to form an integral mass. Portions of the teeth 16 and 18 forming the capacitor plates are embedded in the fused block portion 24 and the remainder extends from the block a distance at least twice the plate length to form leads. The illustrated unit is separated into individual capacitors by removing the transverse or "back" portion of each comb member and severing the individual capacitors from the unit as shown in Figure 5. By reducing the amount of overlap of an aligned pair of plates, capacitors may be produced with a capacitance value of 30 picofarads or less.

Claim 1 is directed to the capacitor and defines the plate and lead as "integral." Claim 5 is drawn to the method just described and specifies each comblike structure as formed of a single metallic sheet. Claims 2 and 3 are dependent on claim 1 and claims 6 and 7 are dependent on claim 5 and include limitations to teeth that are in overlapping and non-overlapping relationship, respectively. Claim 4 is directed to the intermediate product existing just prior to removal of the "back" portion of the comb and separation into individual capacitors.

Nine references were relied upon by the examiner and board in various alternative combinations. However, we find five, the patents to Rhodes,[1] Bair,[2] Delloye,[3] Freeburg,[4] and Bareiss[5] sufficient to determine the appeal and limit our discussion thereto.

Rhodes relates to a method of simultaneously manufacturing a plurality of capacitors of a type he describes as

shown in prior patents and consisting of:

* * * a plurality of thin glass sheets separated by thin metal foils which either alternately project beyond two opposite edges of the glass sheets and are embedded therebetween or have separate thin metallic ribbons or lead wires attached to said thin metal foils, which ribbons or wires project beyond said opposite edges while the metal foils are wholly embedded between said glass sheets.

In Rhodes' illustrated example, separate metal foil plate elements with wire leads spot welded thereto are disposed on each side of an intermediate glass strip. Additional outer strips of glass and glass covers complete the assembly. The stacked elements are then subjected to heat and pressure to fuse them into an integral block with the two leads for each capacitor extending from opposite sides of the block. The block is then separated into individual capacitors.

Bair is one of the prior patents referred to by Rhodes in the passage quoted above. Bair employs metallic foil plate elements and teaches that the capacitance varies with the extension of those elements inwardly from the edge of the glass block.

Delloye discloses a condenser which includes overlapping plate forming sheets that are fused within a mass of glass. Delloye states that "[t]he metallic sheets, networks, or conducting deposits are provided with terminal lugs," which lugs extend out of the mass and serve as leads.

Freeburg discloses a method of manufacturing a plurality of wafer-like capacitors wherein leads are attached to a carrier wire in spaced relationship to form an integral comb-like structure and the carrier wire is later severed from the leads.

1. Patent No. 3,310,392, issued March 21, 1967.

2. Patent No. 2,526,704, issued October 24, 1950.

3. Patent No. 887,598, issued May 13, 1908.

4. Patent No. 2,953,840, issued September 27, 1960.

5. Patent No. 2,395,835, issued March 5, 1946.

# 647

Bareiss relates to forming grid assemblies for thermionic tubes. Thin metallic sheets are stamped to provide a plurality of spaced parallel grid elements held together by uncut back portions at both ends. A number of the sheets are then mounted in alignment in spaced parallel relationship and the elements are secured together by fusing spaced support sheets of glass to their respective ends. The back portions of the sheets are then sheared off to leave an integral grid assembly of spaced and aligned elements.

## OPINION

Appellant argues that the requirement that the leads be "integral" with the plate elements distinguishes from any structure requiring the attachment of leads. We do not agree. Appellant's specification does not expressly restrict the meaning of "integral" to "one piece" and such a meaning is wholly irreconcilable with the recitation in claim 1 of "a vitreous case surrounding and *integrally* united with the capacitor unit so formed" (emphasis added). As indicated by the board, "integral" is sufficiently broad to embrace constructions united by such means as fastening and welding. See Henderson v. Grable, 339 F.2d 465, 52 C.C.P.A. 920 (1964). Turning to Delloye, we think that a person skilled in the art would interpret that reference as disclosing that each plate and its lead is made from a single sheet. Moreover, that the art makes no such distinction as appellant urges is apparent from the above quote from Rhodes referring to "thin metal foils which project beyond the glass sheets" as an alternative to "separate thin metallic ribbons or lead wires attached to thin metal foils."

Appellant further relies on his variance of overlap of the capacitor plates, including zero overlap, the provision of a

lead portion twice the length of the plate portion, and the use of a comb-like structure with later removal of the "back" of the comb. However, the disclosure in Bair [6] of the effect of varying the positioning of plate elements on capacitance clearly suggests that the overlap be varied to adjust the capacitance. Appellant cites no different or unexpected result in the selection of a particular length for the leads which thus appears to be no more than an obvious matter of choice. Freeburg and Bareiss disclose the employment of a transverse carrier or "back" as a common expedient to insure maintenance of spaced relationships. While Bareiss discloses a grid rather than a capacitor, its intermediate product (Fig. 14) includes one-piece metallic sheets, which in effect are "comb-like" with the addition of a second back portion at the ends of the teeth, mounted for subsequent severance of the "back" portions.

For the foregoing reasons, we affirm the decision of the board.

Affirmed.

6. Appellant introduced affidavits of two experts in the employ of Corning Glass Works, the apparent assignee of the present application, interpreting the Bair patent and urging that plate elements described as of "metal foil" in that patent

would be only 250 micro-inches thick and extend from the block only 3/32 of an inch in actual practice. Neither Bair's disclosure nor appellant's claims, however, are limited to any particular thickness for the plates or leads.