Donald L. SNELLMAN d/b/a Norfin, Plaintiff–Appellant,

v.

RICOH COMPANY, LTD., Defendant/Cross–Appellant.

Appeal Nos. 87–1434, 87–1435.

United States Court of Appeals, Federal Circuit.

Nov. 25, 1988.

See also, Fed.Cir., 836 F.2d 528.

James F. Davis, Howrey & Simon, Washington, D.C., argued for plaintiff-appellant. John Lockie and Karen Wuest, Metzger & Shadyac, Washington, D.C., were on the brief for plaintiff-appellant.

Gerald W. Griffin, Cooper & Dunham, New York City, argued for defendant/cross-appellant. Preston Moore and Robert D. Mullaney, Morrison and Foerster, of San Francisco, Cal., were on the brief for defendant/cross-appellant. Also on the brief were Arthur I. Neustadt and Richard D. Kelly, Oblon, Fisher, Spivak, McClelland and Maier, P.C., Arlington, Va.

Before MARKEY, Chief Judge, FRIEDMAN, Circuit Judge, and BALDWIN, Senior Circuit Judge.

FRIEDMAN, Circuit Judge.

The questions in this case, on appeal and cross-appeal from the United States District Court for the Northern District of California, are whether the district court erroneously (1) denied a motion for judgment n.o.v. on the jury finding that the defendant Ricoh Co., Ltd. (Ricoh) infringed the appellant Norfin's patent, and (2) held, in connection with setting aside the jury award of damages and granting a new trial on that issue, that certain evidence relating to damages had been improperly admitted. We (1) affirm the denial of judgment n.o.v. on infringement and (2) vacate the ruling on damages and remand for further proceedings on that issue.

I

The appellant Norfin, of which Mr. Snellman is the sole proprietor, manufactures and sells paper sorting, collating, and binding products used in photocopying and offset lithography. Mr. Snellman is co-inventor of U.S. Patent No. 3,414,254 (the '254 patent) for an improved paper sorter. The '254 paper sorter has fewer moving parts than most sorters, which makes it more reliable and cheaper to manufacture. The '254 patent has been commercially successful and has been the subject of previous litigation.

In a suit by Norfin against IBM, the '254 patent was held valid and infringed. *Norfin, Inc. v. International Business Machs. Corp.*, 453 F.Supp. 1072, 199 USPQ 57 (D.Colo.1978), *aff'd*, 625 F.2d 357, 207 USPQ 737 (10th Cir.1980). As a result of that suit, IBM paid Norfin a lump sum royalty of $20.5 million, which included a post-litigation license under the '254 patent. That amount was agreed to by the parties before the final decision of the court of appeals, in an agreement that dealt with the various possible outcomes of the litigation.

Norfin granted Ricoh a license under the '254 patent for one of the Ricoh copiers;

Norfin ordinarily did not license its patents. When Norfin refused to license the '254 patent for use with other Ricoh copiers, Ricoh and Norfin then entered into a sales and purchase agreement under which Norfin would manufacture paper sorters for use with Ricoh's new mid-to-high speed copiers.

Ricoh's engineers visited Norfin a number of times and observed each phase of Norfin's development of the sorters. When Mr. Snellman decided to redesign the sorter prototype, which would delay Ricoh's preparations for a trade show, Ricoh notified Norfin that it would rebuild its own prototypes for the trade show. Norfin did not object but requested that the prototype or drawings be sent to it.

Following Ricoh's successful demonstration of its copiers at the trade show, Norfin finished its prototype sorter and tested it with Ricoh's copiers. Ricoh engineers were present at the tests and photographed the Norfin prototype.

Ricoh continued to develop its own sorter. After receiving an opinion from counsel that the Ricoh sorter would not infringe the '254 patent, Ricoh in September 1980 implemented a plan to manufacture and market its own sorters.

Due to Norfin's delays in shipping a finished collator, Ricoh terminated the purchase agreement and fitted its copiers with its own collators.

After observing and inspecting Ricoh collators at a trade show in Germany, Norfin advised Ricoh that "authorization to manufacture this equipment and/or to show it has not been given by my company. To the contrary, those rights are exclusively the property of Norfin." After further correspondence, Norfin filed the present infringement suit against Ricoh.

The case was tried to a jury, which found that Ricoh had infringed the '254 patent and awarded damages of $12,000,000. The jury further found that Ricoh had breached its contract with Norfin and awarded contract damages of $2,900,000.

The district court granted JNOV, or alternatively a new trial, on the contract issue and on the issue of damages for infringement, and denied a new trial or JNOV on infringement. (We affirmed the JNOV on the contract issue in an earlier, unpublished opinion. *Snellman v. Ricoh Co., Ltd.*, 802 F.2d 469 (1986)). The court ruled that certain evidence relating to damages had been improperly admitted, and concluded that "[t]he verdict of $12,000,000 constitutes a miscarriage of justice in the opinion of this court."

Both parties began preparing for a second trial on the issue of damages for patent infringement. During discovery, the court issued an order precluding Norfin from introducing certain evidence.

> Among the damage claim evidence identified by the plaintiff through discovery, the only damage calculation that complies with the Court's orders is plaintiff's calculation of a reasonable royalty on the basis of defendant's actual sales of infringing collators, to which a royalty rate of 10% was applied by plaintiff's expert. The royalty thus calculated by plaintiff's expert is $453,000.

The court barred Norfin from introducing the earlier IBM agreement or developing new damage estimates. It held that one of Norfin's calculations was

> legally invalid and inadmissible in that it [was] arrived at on the basis of the $20,-500,000 settlement negotiated by the plaintiff in a prior lawsuit against IBM. Repeatedly, the court has informed the plaintiff that this settlement agreement cannot be the basis for a damage award in this case.
>
> There is no basis for permitting the plaintiff to attempt now to perform new damage calculations in an effort to generate new admissible evidence. The plaintiff has failed to meet four scheduled deadlines for provision of its damage claim information and the deposition of its designated expert—two of them set by Court Order. The plaintiff has known since January, 1985 that a retrial would occur on the issue of patent damages and has known since December, 1985 that the retrial would occur in June or July, 1986. Pursuant to Rules 16(f) and 37(b)(2)(B),

the Court concludes that plaintiff should be precluded from offering any damage claim evidence other than that already disclosed to defendant.

As a result of these rulings, Norfin agreed to a judgment of $740,647 ($453,000 plus prejudgment interest), which merged with the earlier judgment that Ricoh had infringed the '254 patent. Both parties have appealed from this judgment. Ricoh raises the infringement issue on its cross-appeal, and Norfin raises the damages issue on its appeal. Norfin's appeal challenges the underlying predicate of the limitation of its damages to $740,647, namely the court's ruling that certain evidence relating to damages was improperly admitted and the court's setting aside the jury verdict on damages and ordering a new trial on that issue.

## II

Ricoh alleges that the district court erred in denying its motion for judgment n.o.v. on patent infringement.

Where, as here, the overall question of infringement was answered by a jury and the losing party's motion for JNOV was denied, an appellate court's review of the denial is limited. The appellate court is permitted to review only the sufficiency of the evidence, a question of law. Such a review must be conducted within a set of guidelines which include: (1) a consideration of all the evidence, (2) in a light most favorable to the non-moving party, (3) drawing all reasonable inferences favorable to that party, (4) without determining the credibility of the witnesses, and (5) without substituting the court's choice for that of the jury between conflicting elements in the evidence.

To obtain a reversal, [Ricoh] (the moving party below) must persuade us that either (1) the jury's findings were not supported by substantial evidence or (2) those findings cannot support the legal conclusions which necessarily were drawn by the jury in forming its verdict. If, however, there was substantial evidence of such quality and weight that

reasonable and fair-minded men in the exercise of impartial judgment could reasonably return a verdict for the non-moving party, then the denial of the JNOV was correct.

*McGill Inc. v. John Zink Co.*, 736 F.2d 666, 672, 221 USPQ 944, 948 (Fed.Cir.), *cert. denied*, 469 U.S. 1037, 105 S.Ct. 514, 83 L.Ed.2d 404 (1984) (citations omitted).

The determination of infringement is a two-step process. First, the meaning of the claim alleged to have been infringed must be determined. Second, the alleged infringing device must be compared to the claims to determine whether the claims cover the device, either literally or under the doctrine of equivalents. *Mannesmann Demag Corp. v. Engineered Metal Prods. Co.*, 793 F.2d 1279, 1282, 230 USPQ 45, 46 (Fed.Cir.1986).

The parties agree that the issue of infringement was limited to claim 1 of the '254 patent. Ricoh has failed to show that the jury's finding that the Ricoh device infringes claim 1 rests upon a misinterpretation of the claim or is not supported by substantial evidence. *McGill*, 736 F.2d at 672, 221 USPQ at 948.

Claim 1 reads:

[a]   In combination with a receiver having an upright column of spaced shelves;

[b]   substantially vertically moving sheet conveyor means opposite said receiver for conveying sheets in a substantially vertical course,

[c]   a movable sheet deflector assembly operatively associated with said conveyor means,

[d]   means mounting said deflector assembly for movement along said conveyor,

[e]   means for positioning said deflector assembly at predetermined positions along said conveyor for deflecting moving sheets therefrom into selected ones of said shelves, and

[f]   sheet retaining means cooperating with said conveyor means for holding said moving sheet thereto for convey-

ing to the position at which it is deflected.

Norfin's commercial embodiment of the patented invention and Ricoh's collator are shown below:

Both devices collate paper by deflecting it from its vertical path through a guide and into various bins. In prior art patents (McGalliard No. 2,661,209 and Pearson No. 3,273,882), each bin had its own adjacent "finger" to deflect the paper through its own guide and into the bin. In the '254 patent, however, the "sheet deflector assembly" moves along the vertical path and guides the sheets into the bins.

The basic dispute between the parties is over the meaning of the terms "movable sheet deflector assembly" and "means for positioning said deflector assembly at predetermined positions along said conveyor for deflecting moving sheets therefrom into selected ones of said shelves." The argument essentially is whether the "finger" that "deflect[s] moving sheets [from the conveyor]" must be a single element attached to the "sheet deflector assembly."

Norfin contends that the Ricoh collator includes "a movable sheet deflector assembly." Ricoh responds that "Norfin cannot sustain the position that an 'assembly' can mean a guide unit and trigger arm *plus* deflector fingers that have no permanent or continuous connection to the guide unit and trigger arm" (emphasis in original). In other words, Ricoh argues that because its

"fingers" are not attached to its "moveable sheet guide unit," but rather are actuated by its engagement arm, its device does not infringe.

■ Although claim interpretation is a question of law, *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1270, 229 USPQ 805, 811 (Fed.Cir.1986), *cert. denied*, 479 U.S. 1030, 107 S.Ct. 875, 93 L.Ed. 2d 829 (1987), expert testimony is admissible to explain the meaning of technical terms in the claims and to give an opinion on the ultimate question of infringement. *Amstar Corp. v. Envirotech Corp.*, 823 F.2d 1538, 1545, 3 USPQ2d 1412, 1417 (Fed. Cir.1987); *McGill*, 736 F.2d at 675, 221 USPQ at 950. The jury heard expert testimony that claim 1 does not require that a single element must alter the path of the paper or that the element must be attached to the movable sheet deflector assembly.

Norfin's patent expert, Mr. Dunner, testified that

what the Snellman claim 1 apparatus has is an element which moves vertically up and down, which has a deflecting function and which also serves to trigger the release of paper from a vertical conveyor belt. That is exactly what the Ricoh

device has. Claim 1 is broad enough to cover that literally or otherwise.

Mr. Dunner further stated that "[a]s [the Ricoh device's] engagement arm hits these little fingers, the movement ... serves to move these fingers ... out right direct toward the bins." In other words, the engagement arm, which is a part of the movable sheet guide, deflects the paper from the vertical conveyor belt by tripping each of the fingers.

Since the positioning element of the claim is in means-plus-function form, the specification must be looked to to determine the means claimed to perform the function. 35 U.S.C. § 112 (1982); *Palumbo v. Don–Joy Co.*, 762 F.2d 969, 975, 226 USPQ 5, 8 (Fed.Cir.1985); *D.M.I., Inc. v. Deere & Co.*, 755 F.2d 1570, 1574, 225 USPQ 236, 238 (Fed.Cir.1985). The specification states that "[a] further object is to provide an improved collator device which employs a *single deflector member* for rapidly guiding the sheets in succession to a predetermined group of receiver trays or sorting stations with provision for automatic control means for initially indexing the deflector member and for recycling the deflector member upon completion of a sorting cycle or run," and that "[d]uring [the paper's] downward course on the vertical portion of the conveyor, the sheets are deflected *by the distributor mechanism* onto the respective shelves of the receiver by means of *an* indexing deflector assembly 16, shown most clearly in FIGS. 2 and 3, which includes the deflector plate 17" (emphasis added).

■ Accepting Mr. Dunner's interpretation of the claim and his expert conclusion on infringement, as the jury obviously did, and in view of the language of the specification, there was substantial evidence to support the jury verdict of infringement. *McGill*, 736 F.2d at 675, 221 USPQ at 950–51.

### III

A. If the only issues before us were the propriety of the district court's setting aside the jury verdict and ordering a new trial on damages, it is doubtful whether there would be an appealable final judgment. Only "[u]nder certain circumstances the appellate court may enquire into the action of the trial court on a motion for a new trial." *Fairmount Glass Works v. Coal Co.*, 287 U.S. 474, at 482, 53 S.Ct. 252, at 254, 77 L.Ed. 439 (1932). We have held similarly, that an order for *de novo* consideration is not appealable. *Cabot Corp. v. U.S.*, 788 F.2d 1539 (Fed.Cir.1986).

Here, however, during discovery for the new trial on damages, the district court limited the evidence that Norfin could introduce. As a result, Norfin could show damages of only $740,647. No factual dispute remained for trial, and Norfin properly acquiesced in the entry of judgment for that amount. Norfin thereby obtained a final appealable judgment. This is not a situation, as in remittitur, where the judge has entered judgment pursuant to an agreement by the plaintiff to reduce the jury verdict. *Donovan v. Penn Shipping Co.*, 429 U.S. 648, 97 S.Ct. 835, 51 L.Ed.2d 112 (1977). To the contrary, Norfin consistently maintained that it was entitled to the jury verdict, which it believed was based on properly admitted evidence.

Since Norfin did not agree with the court's evidentiary rulings, it may now appeal the final judgment, reflecting those rulings, that awarded it only $740,647. Norfin's acquiescence in that judgment was designed to obtain an early reviewable order and did not waive its objections to the court's evidentiary rulings. When a plaintiff cannot prevail under the evidence it has presented, it need not proceed to trial to preserve its appeal. As the Supreme Court has noted, a plaintiff may consent to a final judgment to enable it to appeal an otherwise interlocutory order:

> The plaintiffs did not consent to a judgment against them, but only that, if there was to be such a judgment, it should be final in form instead of interlocutory, so that they might come to this court without further delay.

*Thomsen v. Cayser*, 243 U.S. 66, at 83, 37 S.Ct. 353, at 358, 61 L.Ed. 597 (1916).

B. Setting aside the jury award of $12,-000,000 as "a miscarriage of justice" and ordering a new trial on the damages issue, the district court ruled that (A) an exhibit showing the projected sale of the Ricoh collator and the testimony of Mr. Stone, Norfin's expert, regarding potential sales, "were irrelevant to the issue of damages and should have been either excluded or appropriately limited by admonition," and (B) "the admission of the IBM–Norfin agreement as a comparable license agreement was probably error in light of the unique circumstances surrounding the agreement."

■ 1. In determining a reasonable royalty, the jury considered evidence that Ricoh expected and intended to manufacture and distribute 40,000 to 50,000 infringing machines in the United States. This evidence, consisting of a document projecting Ricoh's anticipated sale and expert testimony relating to those calculations, was relevant and proper in determining a reasonable royalty.

Ricoh did not object to an instruction that directed the jury to calculate damages "based upon or measured by the expectations of the parties at the time of the infringement." The jury justifiably could have calculated a lump sum royalty based on Ricoh's expected sales, even though the evidence relating to such sales was not limited to "the date of first infringement." Cf. TWM Mfg. Co. v. Dura Corp., 789 F.2d 895, 899–900, 229 USPQ 525, 527–28 (Fed. Cir.), cert. denied, 479 U.S. 852, 107 S.Ct. 183, 93 L.Ed.2d 117 (1986) (district court did not abuse its discretion in using a preinfringement, internal memorandum of projected profits to arrive at a reasonable royalty in part because the infringer "used the figures in the memorandum in deciding whether to manufacture and market the infringing device").

Ricoh apparently contends that because evidence of its sales forecasts projecting sales of only 3,150 units was introduced at trial and because that projection accorded with the forecast in the Ricoh–Norfin "Sales and Purchase Agreement," this number correctly reflected Ricoh's anticipated sales. As we noted in TWM, however, "[t]he [finder of fact] thoroughly considered and weighed the Dura memorandum, and this court may not reweigh it. 'Determining the weight and credibility of the evidence is the special province of the trier of fact.'" TWM, 789 F.2d at 900 (quoting Inwood Laboratories, Inc. v. Ives Laboratories, Inc., 456 U.S. 844, 856, 102 S.Ct. 2182, 2189, 72 L.Ed.2d 606 (1982)). Here, the jury considered both sales forecasts and accepted that of Norfin. The jury was authorized to do so. Inwood, 456 U.S. at 856, 102 S.Ct. at 2189.

2. The district court did not explain why it concluded that "the admission of the IBM–Norfin agreement as a comparable license agreement was probably error," although it stated in subsequently limiting the evidence Norfin could introduce at the retrial on damages that "this settlement agreement cannot be the basis for a damage award in this case." Perhaps the district court was invoking the rule that license agreements which are "an offer to settle a 'claim' (patent infringement) which was then in dispute, both as to validity and amount," may be inadmissible under Fed. R.Evid. 408. Deere & Co. v. International Harvester Co., 710 F.2d 1551, 1556, 218 USPQ 481, 485 (Fed.Cir.1983).

In this case, however, the Norfin–IBM agreement was not an attempt to resolve the dispute over infringement or to avoid litigation. See, e.g., Rude v. Westcott, 130 U.S. 152, 164, 9 S.Ct. 463, 468, 32 L.Ed. 888 (1889) ("The avoidance of the risk and expense of litigation will always be a potential motive for a settlement."). Rather, the negotiated license would become effective only if the appellate litigation ultimately resulted in IBM's liability. The agreement properly was admitted into evidence, and the jury was justified in considering it in determining a reasonable royalty.

■ Although the jury awarded damages equal to more than four times Ricoh's total sales, we cannot say that the award was "a miscarriage of justice" in view of the $20.5 million paid by IBM for a license under the '254 patent and Ricoh's sales forecast of 40,000 to 50,000 copiers. See

*Radio Steel & Mfg. Co. v. MTD Prods., Inc.*, 788 F.2d 1554, 1557, 229 USPQ 431, 433 (Fed.Cir.1986) (in upholding a royalty rate which exceeded actual profits the court stated: "a reasonable royalty, however, is based not on the infringer's profit, but on the royalty to which a willing licensor and a willing licensee would have agreed at the time of infringement").

C. The result of our ruling on the admissibility of the damages evidence is that the judgment of the district court awarding Norfin only $740,647 cannot stand. We shall vacate that judgment and remand the case to the district court for further proceedings on the damages issue. The district court has broad discretion in conducting those proceedings. Among other things, the court may conduct a new trial on damages in accordance with our rulings on the evidence admissible on that issue or may reinstate the jury verdict.

## CONCLUSION

The denial of Ricoh's motion for judgment n.o.v. on the issue of patent infringement is affirmed, and to that extent the judgment of the district court is affirmed. The judgment of the district court is vacated insofar as it limited the damages to $740,647, and the case is remanded to that court for further proceedings on the damages issue in accordance with this opinion.

## COSTS

Costs to appellant Snellman.

AFFIRMED IN PART AND VACATED AND REMANDED IN PART.