**ADVANCED CARDIOVASCULAR SYSTEMS, INC., Plaintiff–Appellant,**

v.

**SCIMED LIFE SYSTEMS, INC., Defendant–Appellee.**

No. 89–1043.

United States Court of Appeals, Federal Circuit.

Oct. 20, 1989.

Richard A. Bardin, Fulwider Patton Rieber Lee & Utecht, of Los Angeles, Cal., argued for plaintiff-appellant. With him on the brief was Craig B. Bailey. Also on the brief were Leon R. Goodrich and Marko J. Mrkonich, Oppenheimer Wolff & Donnelly, St. Paul, Minn., of counsel.

Robert C. Morgan, Fish & Neave, New York City, argued for defendant-appellee. With him on the brief were Kenneth B. Herman, Roberta J. Morris and Robert A. Musicant.

Before FRIEDMAN, NEWMAN, and BISSELL, Circuit Judges.

BISSELL, Circuit Judge.

Advanced Cardiovascular Systems, Inc. (ACS) appeals the decision of the United States District Court for the District of

Minnesota, *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.,* 697 F.Supp. 354, 8 USPQ2d 2002 (D.Minn.1988), granting the summary judgment motion of Scimed Life Systems, Inc. (Scimed) and dismissing ACS's complaint. We vacate and remand.

## BACKGROUND

ACS and Scimed are manufacturers of dilation catheters employed to enlarge arteries narrowed by cholesterol or other deposits. In using these catheters, the distal end is inserted through an artery and is maneuvered into the narrowed cavity after a separate guiding catheter has been run along a previously inserted guidewire. Once in place, the balloon at the distal end is inflated by injecting a fluid through the opposite proximal end. The inflated balloon expands to a predetermined size and shape to press against the arterial wall and enlarge the passageway. When the dilation procedure is complete, the balloon is deflated and the devices removed.

ACS, as assignee, obtained United States Patent No. 4,323,071 ('071) for a guiding and dilating catheter assembly and filed suit against Scimed, alleging that Scimed's catheter infringed claims 1, 5, and 10–16 of the '071 patent. Figure 1 illustrates ACS's assembly.

FIGURE 1

Scimed responded by denying infringement, counterclaiming for antitrust violations, tortious interference with prospective contractual relations and unfair competition, and moving, in separate motions, for summary judgment on the issues of infringement and inequitable conduct. The district court granted summary judgment of noninfringement, but denied the motion on inequitable conduct.

## ISSUE

Whether the district court erred in granting summary judgment that the accused catheters do not infringe the '071 patent.

## OPINION

The dispute underlying the district court's grant of summary judgment of noninfringement is over the meaning of the words "formed integral" and "formed therein" in the following limitations of the asserted claims:

said tubular member of said dilating catheter assembly having proximal and distal ends and an inflatable annular portion *formed integral* with the tubular member of said dilating catheter assembly near the distal end thereof;

an inflatable annular portion *formed integral* with the tubular member near the distal end thereof;

said tubular member having an inflatable annular portion *formed integral* therewith adjacent the distal end; and

said second tubular member having a balloon-shaped portion *formed therein* adjacent the distal end.

'071 patent, claims 1, 5, 10, 11 (emphasis added). In contending that the accused devices infringe the '071 patent—either literally or by equivalency—ACS maintains that the terms refer to a catheter construction in which the balloon portion continues and completes the structure of the outer catheter tube and has material properties comparable to those of the tube. To support this interpretation, ACS submitted three declarations—one from each of the

inventors and one from an ACS expert who was allegedly one with ordinary skill in the art of catheter design—and a dictionary definition of the term "integral." Relying solely on the specification and only part[*] of the patent's prosecution history, Scimed contends that the terms mean "of one piece." If Scimed is correct, infringement is avoided because Scimed's catheter is constructed from separate balloon and outer tube segments. Figure 2 illustrates Scimed's catheter.

FIGURE 2

If ACS is correct, Scimed's catheter might infringe, either literally or equivalently, because the balloon segment has a long tube-like skirt that is affixed by glue to the outer tube at a necked-down region. This connecting structure between the balloon and outer tube might be covered by the claims if the disputed terms require only that the balloon segment "continue and complete" the outer tube.

Although recognizing that defining "integral as meaning 'completing and continuing the structure' ... is logically possible" and that ACS might be able to present expert testimony in support thereof, the district court refused to consider ACS's extrinsic evidence supporting that interpretation. *Advanced*, 697 F.Supp. at 360, 8 USPQ2d at 2006. The court accepted Scimed's asserted definition, relied solely on the specification and the incomplete prosecution history, and, for infringement (both literal and under the doctrine of equivalency), limited the terms to describe a catheter of unitary and adhesive-free construction. *Id.* at 359, 8 USPQ2d at 2005.

In a different case, the Court of Customs and Patent Appeals (CCPA) refused to confine the term "integral" to mean "one-piece." *In re Hotte*, 475 F.2d 644, 647, 177 USPQ 326, 329 (CCPA 1973). In *Hotte*, the CCPA expressly rejected the appellant's argument "that the requirement that the [claimed electrical] leads be 'integral' with the plate elements distinguishes from any structure requiring the attachment of leads" and held that " 'integral' is sufficiently broad to embrace constructions united by such means as fastening and welding." *Id.* We, of course, do not hold that "integral" can never mean "one-piece," but only conclude that the disputed terms are not so common and so ordinary that their meaning could never be seriously disputed.

The meaning of the disputed terms here is not clear from the specification, the incomplete prosecution history, and the other claims. *Cf. General Elec. Co. v. United States*, 572 F.2d 745, 751, 198 USPQ 65, 70 (Ct.Cl.1978) (recognizing that summary judgment is appropriate if the meaning of a claimed term is made incontrovertibly clear in the patent or in the file wrapper). The claims and the specification do not define the terms, and the phrase "one-piece construction" was never used during prosecution.

Although the district court and the dissent in construing the terms use certain

---

[*] As explained hereinafter, not all of the relevant prior art references had been made of record prior to the summary judgment grant.

prosecution statements to distinguish the Nozick and Taricco patents, according to ACS (and left undisputed by Scimed) neither of those patents were part of the summary judgment record. Without having the references before it, the district court could not have properly interpreted the implications of any arguments made to overcome them. *See Water Technologies Corp. v. Calco, Ltd.,* 850 F.2d 660, 667, 7 USPQ2d 1097, 1102 (Fed.Cir.1988) (explaining that a court "must construe claims 'in the light of the claim language, the other claims, the prior art, the prosecution histo-ry, and the specification'" (quoting *SRI Int'l v. Matsushita Elec. Corp. of Am.,* 775 F.2d 1107, 1118, 227 USPQ 577, 583 (Fed. Cir.1985)) (in banc) (emphasis omitted)).

The Gruntzig patent was part of the record. It is unclear, however, whether the district court construed the Gruntzig device as having an inner tube, a concentric outer tube, and a balloon glued onto the outer concentric tube. As can be seen below from the labeled version of Gruntzig's figure 2, that interpretation would be incorrect.

Moreover, the district court and the dissent also construe the terms as requiring a single-piece construction by relying on certain statements made to allegedly distinguish the Gruntzig patent. None of the statements, however, aids in interpreting the terms because the statements themselves use the disputed terms "formed integral" and "formed therein" without any illuminating definition, and nothing in the Gruntzig patent sheds light on their meaning.

This is a case where expert testimony is "particularly helpful" because the meaning of the disputed terms is not readily apparent from the patent and its incomplete prosecution history. *See Moeller v. Ionetics, Inc.,* 794 F.2d 653, 657, 229 USPQ 992, 995 (Fed.Cir.1986); *see also Snellman v. Ricoh Co.,* 862 F.2d 283, 287, 8 USPQ2d 1996, 2000 (Fed.Cir.1988) (using expert testimony to explain the meaning of technical terms), *cert. denied,* — U.S. —, 109 S.Ct. 3199, 105 L.Ed.2d 707 (1989); *Tandon Corp. v. United States Int'l Trade Comm'n,* 831 F.2d 1017, 1021, 4 USPQ2d 1283, 1286 (Fed.Cir.1987) (directing that "[w]hen the meaning of key terms of claims is disputed, as in this case, extrinsic evidence may be adduced including testimo-ny of witnesses"). The district court erred here in its refusal to consider ACS's extrinsic evidence. The declarations submitted by ACS contradict Scimed's definition of the terms. After studying the '071 patent, the Gruntzig patent and ACS catheters of the type described in the '071 patent, the expert witness declared that the term " 'integral', as used by [the '071 patent claims] refers to [a] continuous balloon tube construction" in which "[a] balloon with comparable material properties completes and continues the structure of the outer tube at the distal end of the catheter." One inventor declared that the disputed terms, "as used in the patent claims in the ['071] patent, do not exclude a construction in which a balloon is made as a separate part and then attached to the outer tube to continue and complete the construction of the outer tube". The other inventor declared that "[i]t was by no means crucial to our work to have a one-piece balloon tube construction...."

The dictionary definition submitted by ACS also supports its contention. According to Webster's, "integral" means:

1 a: essential to completeness: CONSTITUENT ... c: formed as a unit with

another part 2: composed of integral parts: INTEGRATED 3: lacking nothing essential: ENTIRE

Webster's New Collegiate Dictionary 595 (8th ed. 1981). This definition does not conclusively limit "integral" to "of one piece."

Because nothing yet made of record restricts the terms to mean "of one piece," Scimed has failed to establish that it was entitled to summary judgment as a matter of law. *See Hi–Life Prods., Inc. v. American Nat'l Water–Mattress Corp.,* 842 F.2d 323, 325, 6 USPQ2d 1132, 1133 (Fed.Cir. 1988) (requiring both an absence of a genuine issue of material fact and entitlement to judgment as a matter of law before granting summary judgment). Accordingly, the summary judgment of noninfringement is vacated and the case remanded with instructions to reinstate ACS's complaint. *See Howes v. Medical Components, Inc.,* 814 F.2d 638, 647, 2 USPQ2d 1271, 1276 (Fed.Cir.1987).

### COSTS

Each party is to bear its own costs.

### VACATED and REMANDED.

PAULINE NEWMAN, Circuit Judge, dissenting.

On Scimed's motion for summary judgment, the district court, in faithful adherence to this court's admonitions, decided the threshold issue of claim interpretation as a question of law. *Advanced Cardiovascular Systems, Inc. v. Scimed Life Systems, Inc.,* 697 F.Supp. 354, 359, 8 USPQ2d 2002, 2005 (D.Minn.1988). There was no disputed question of material fact as to this issue. *Id.* The district court's judgment was procedurally proper, and it requires appellate review on its merits. Thus I must dissent from the panel majority's treatment of the issue as not amenable to summary resolution.

Both parties agreed that the sole question with respect to claim interpretation was the meaning of the words "formed integral" in representative claim 10:

10. In a dilating catheter assembly for use with a radiographic contrast liquid, a flexible tubular member and having proximal and distal ends, said tubular member having an inflatable annular portion *formed integral* therewith adjacent the distal end and a fitting carried by the proximal end and means permitting the introduction of a radiographic contrast liquid for inflating said inflatable annular portion and the removal of said radiographic contrast liquid to deflate said annular portion.

and the words "formed therein" in representative claim 11:

11. In a dilating catheter assembly, a first flexible tubular member formed of a flexible plastic material and serving as an inner catheter, a second flexible tubular member, said second tubular member encasing said first tubular member so that said first and second tubular members are coaxially aligned, said first and second tubular members having proximal and distal ends, said second tubular member having a balloon-shaped portion *formed therein* adjacent the distal end and a fitting carried by the proximal ends for permitting insertion and withdrawal of a fluid for inflating and deflating the balloon-shaped portion of the second tubular member.

(Emphases added.)

The district court, reviewing the undisputed facts of the specification and the prosecution history, held as a matter of law that "formed integral" and "formed therein" mean that the claims are directed to a single-piece construction of balloon and catheter tube. The court observed that the patent specification describes the balloon and catheter as a single tube of plastic material, and that the specification emphasizes that this unitary construction from a single tube is a principal advantage of the invention. The court quoted some of ACS's many statements to this effect in the prosecution history: in distinguishing the Nozick reference, that applicant "has provided a balloon-shaped portion which is *formed from the same tubular member*" (emphasis added by the district court); in distinguishing the Taricco reference, that

"[i]n applicant's novel construction, the balloon shaped portion is formed of the same tubular member which forms the tubular member of the catheter assembly"; in distinguishing the Gruntzig reference, that the ACS structure has "a balloon shaped portion formed therein" and "[s]uch an inflatable balloon like portion formed integral with the tubular member is an important feature of applicants' invention"; that Gruntzig's balloon is "a separate element" which needed to be cemented onto the tube, and "is certainly an inferior type of construction to applicants' integral construction." *Advanced*, 697 F.Supp. at 357–58, 8 USPQ2d at 2003–04.

The specification states that "the balloon-like portion 43 is formed by expanding that portion of [the outer tube] to its elastic limit", describes the invention as "the outer tubular member having a balloon formed therein", and states the advantages of avoiding the use of adhesive to attach a separate balloon. In distinguishing the Glover reference, ACS told the examiner that Glover's heat shrinkable plastic catheter does not show applicants' "novel structure" wherein the same heat-shrinkable plastic is used "for forming a balloon-shaped portion adjacent to the outer end" of the catheter.

The district court concluded that "these comments show that what ACS relied on for its distinctiveness was the fact that in its catheter, the balloon was not a separate element from the tube and did not require adhesives to join the two parts." *Id.* at 360, 8 USPQ2d at 2006. The court observed that the examiner refused to allow what is now claim 10 until ACS reinstated the words "integral therewith" after "formed". *Id.* at 357–58, 360, 8 USPQ2d at 2004, 2006. Referring to ACS's proposed claim construction, the district court remarked:

It is significant to note that nowhere in the prosecution history of the patent does the definition that ACS urges appear. In its numerous attempts and opportunities to correspond with the Patent Examiner, ACS *never* refers to integral

as meaning "completing and continuing the structure." [emphasis in original] *Id.* at 360, 8 USPQ2d at 2006.

Accompanied by detailed explanation of its analysis and reasons, the district court held that the claim terms "formed integral" and "formed therein" mean that the balloon and the catheter tube are made of the same tube.

The panel majority grounds its rejection of the district court's judgment in part on the court's having relied on statements in the prosecution history about the Nozick and Taricco references, without reading the entire references. The majority states that the district court erred in that it relied on "only part of the patent's prosecution history", based on the absence of the full text of these references from the materials provided to the district court.

The Nozick and Taricco references were cited during the patent examination, are discussed in the correspondence between the inventors and the examiner during patent prosecution (which correspondence was of record before the district court), and were referred to in Scimed's motion for summary judgment. ACS did not assert before the district court that the prosecution history was prejudicially incomplete. Further, ACS does not now state that it was precluded from providing these references to the district court. If there was a material omission from the record, it should have been raised before the district court. *Jamesbury Corp. v. Litton Indus. Prods., Inc.*, 839 F.2d 1544, 1549, 5 USPQ2d 1779, 1783 (Fed.Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 80, 102 L.Ed.2d 57 (1988).

ACS does not argue that the full texts of the omitted references raise any issue of material fact, or change anything at all. Indeed, ACS does not contradict Scimed's statement that "There has never been any dispute that Nozick and Taricco disclose catheters with glued on balloons." The panel majority's reliance on this circumstance to vacate the district court's judgment is unwarranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("Factual

disputes that are irrelevant or unnecessary will not be counted.") Further, it is inappropriate to criticize (and reverse) the district court for not studying documents that neither party provided to it.

Nor is it a fair criticism to hold, as a fatal flaw in the proceeding, that the district court "refused to consider ACS's extrinsic evidence". In a detailed opinion the district court gave persuasive weight to ACS's statements in the specification and prosecution history, and did not adopt the positions of ACS's expert witness and its inventors. The district court wrote that although "ACS might be able to call experts" (in addition to those already called) who would testify in support of ACS's proposed claim interpretation, ACS is "estopped by that history to urge a broader definition" than that set forth in the prosecution history. *Advanced*, 697 F.Supp. at 360, 8 USPQ2d at 2006. No error has been assigned to this statement of law.

The purpose of expert testimony is to provide assistance to the court in understanding, when the claims are technologically complex or linguistically obscure, how a technician in the field, reading the patent, would understand the claims. *Snellman v. Ricoh Co.*, 862 F.2d 283, 287, 8 USPQ2d 1996, 2000 (Fed.Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 3199, 105 L.Ed.2d 707 (1989). Directly to this point, ACS's own witness Duane Dickens, testifying as an expert, stated that "integral" is used in its ordinary meaning, and is "not a common term of art in the catheter design field". We reiterated in *Howes v. Medical Components, Inc.*, 814 F.2d 638, 643, 2 USPQ2d 1271, 1273–74 (Fed.Cir.1987) that ordinary words in claims that "are not technical terms or terms of art" do not require expert evidence. *See Id.* at 644, 2 USPQ2d at 1274 (interpreting the words "joined" and "extending freely" in their ordinary meaning).

The district court not only received the expert's testimony, but correctly held that this testimony could not change the meaning of the common terms used, as understood in light of the specification, the prosecution history, and the prior art. *See General Elec. Co. v. United States*, 572 F.2d 745, 751, 198 USPQ 65, 70 (Ct.Cl.1978):

> Since the patentee is his own lexicographer, no genuine issue of fact as to the meaning of a claimed term can be found to exist where the meaning is made incontrovertibly clear elsewhere in the patent or in the file wrapper.

(Citation omitted).

In my view the district court correctly interpreted the claims. ACS argues before us that the court gave insufficient weight to Duane Dickens' legal conclusion as to how he would interpret the claims, and to a dictionary definition of "integral". This argument goes to the issue of correctness of the court's conclusion of law, and does not negate the propriety of summary judgment of the question of claim interpretation when the facts are undisputed. *Molinaro v. Fannon/Courier Corp.*, 745 F.2d 651, 654, 223 USPQ 706, 707 (Fed.Cir.1984).

Since the panel majority holds that material facts are in dispute, and thus that summary judgment was inappropriate, the issue of claim interpretation will presumably be determined by the jury, along with the issue of infringement.** With inade-

***

** The question of infringement was also decided on summary judgment, see *Anderson v. Liberty Lobby*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986) ("summary judgment should be granted where the evidence is such that it 'would require a directed verdict for the moving party'") (*quoting Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 624, 64 S.Ct. 724, 727, 88 L.Ed. 967 (1944)); but since that judgment is also vacated, I have commented only on the legal issue of claim interpretation. The panel majority, however, has reproduced drawings of the accused device, taken from ACS' brief. The drawings, which appear to be ACS's adaptations, relate to the question of infringement, literal or by equivalents. *See, e.g., SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1118, 227 USPQ 577, 583 (Fed.Cir.1985) (in banc):

> It is only *after* the claims have been *construed without reference to the accused device* that the claims, as so construed, are applied to the accused device to determine infringement. [emphasis in original]

quate guidance from this court as to how the district court erred in its legal analysis, our decision will raise fresh uncertainty as to the propriety of summary judgment on the issue of claim interpretation, and can only diminish use of this valuable tool.