22 F.3d 1104
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 WARMINSTER FIBERGLASS COMPANY, INC., Plaintiff-Appellant,
v.
DELTA FIBERGLASS STRUCTURES, INC., aka Delta Reinforced
Plastic Structures, Inc., Defendant/Cross-Appellant.
 Nos. 93-1047, 93-1052.
 United States Court of Appeals, Federal Circuit.
 March 17, 1994.
 
 Before ARCHER, PLAGER, and SCHALL, Circuit Judges.
 ARCHER, Circuit Judge.
 
 DECISION
 
 1
 Warminster Fiberglass Co. (Warminster) appeals from the judgment of the United States District Court for the District of Utah, No. 89-C-723J (entered Sep. 28, 1992), that Delta Fiberglass Structures, Inc. (Delta), has not infringed claims 1, 2, 4, 6, or 11 of United States Patent No. 4,391,704 ('704 patent). Delta cross-appeals from the judgment of the district court that the patent is not invalid. We vacate the judgment and remand the case for further proceedings.
 
 DISCUSSION
 I.
 
 2
 The patent at issue is directed to gas-extraction apparatus for a settling tank included in a wastewater treatment system. The apparatus prevents noxious gases generated in wastewater treatment from escaping and fouling the environment. In its only independent claim, the '704 patent claims:
 
 
 3
 1. In combination with a settling tank for a wastewater treatment, said tank including an inlet line for feeding wastewater therein, means to remove sludge from the tank and an outlet zone defined by an effluent trough, at least one side of which has a weir to permit clarified water to spill into the trough; and an outlet to remove clarified water from said trough; an arrangement for preventing noxious gases generated in the wastewater from being discharged into and fouling the atmosphere, said arrangement comprising:
 
 
 4
 A. a hood which is supported over the trough to define a confined region to capture said gases, said hood having a side wall which protrudes into the water in said settling tank at a position spaced from the weir side of the trough, said side wall protruding into the water to a depth below the upper edge of the weir to form a scum baffle integral with the hood; and
 
 
 5
 B. means to treat the captured gases to render them inactive, and to prevent the discharge of said noxious gases into the atmosphere. [Emphasis added.]
 
 
 6
 The district court construed the claim terms "integral" and "side wall" as requiring that the hood be of "one-piece construction." It is undisputed that the Delta hoods have a 1/8 inch gap between the trough cover and scum baffle which runs the circumference of the settling tank and separates the scum baffle structure from the trough cover. Based on this, the district court found that the scum baffle and the trough cover in the Delta products are "two-piece[s]" that "are not structurally tied together" so that the scum baffle is a "separate and distinct" structure from the hood. Accordingly, the district court found that there was no literal infringement because the Delta hoods literally have neither a "side wall" protruding into the water nor a scum baffle "integral" with the hood.
 
 
 7
 The district court also construed the claim term "confined region" as requiring that the hood be "completely sealed" and "impervious to the flow of gases in all dimensions." Because the 1/8 inch gap in the Delta hoods prevents them from being gas tight, the district court found that the hoods do not define a "confined region," and therefore do not literally infringe.
 
 
 8
 The court also found that there was no infringement under the doctrine of equivalents because the accused apparatus was substantially different from the claimed apparatus as defined by the district court. The court reasoned that the claimed apparatus seals in gases and neutralizes them, while Delta's apparatus transports them out of the trough area with air flow. Also, according to the district court, the accused device but not the claimed device could capture gases released by the scum skimmer as it rotated about the surface of the clarifier. Finally, the court held without explanation that the patent was not invalid.
 
 
 9
 Warminster appeals from the judgment of noninfringement. Delta cross-appeals from the judgment as to validity.
 
 II.
 
 10
 A. Warminster argues that the district court misconstrued the term "confined region" in finding no literal infringement. According to Warminster, a "confined region" need not be completely sealed and impervious to gas flow in all dimensions. Referring to the patent and citing a dictionary, Warminster defines a confined region as "a localized enclosure which permits the collection of gases from the weir area," with the extent of confinement depending on which of the alternative disclosed means for treating the gases is employed. Warminster argues that under a proper claim interpretation the court clearly erred in finding that Delta's hoods do not capture gases in a confined region when Delta's gas removal system is in operation.
 
 
 11
 To determine whether an accused device infringes a patent, the court must determine what is the thing patented by construing the claims, and then compare the properly construed claims to the accused device. Snellman v. Ricoh Co., 862 F.2d 283, 286, 8 USPQ2d 1996, 1999 (Fed.Cir.1988). Claims are construed by the court based on the language of the patent document and the prosecution history, in light of any extrinsic evidence such as expert testimony, dictionaries, or learned treatises proffered. See Fromson v. Advance Offset Plate, Inc., 720 F.2d 1565, 1569-71, 219 USPQ 1137, 1140-42 (Fed.Cir.1983) (so construing the claim). Claim construction is reviewed by this court de novo. SRI Int'l v. Matsushita Elec. Corp. of Am., 775 F.2d 1107, 1118, 1138, 227 USPQ 577, 583, 596 (Fed.Cir.1985) (in banc).[1] The ultimate finding of noninfringement is a matter of fact that we review for clear error. Lemelson v. United States, 752 F.2d 1538, 1547, 224 USPQ 526, 530 (Fed.Cir.1985); Fed.R.Civ.P. 52(a).
 
 
 12
 Claim I of the '704 patent claims a hood structure that "define[s] a confined region to capture [noxious] gases [generated in wastewater]." The capture of the gases is what enables the claimed "means to treat the captured gases to render them inactive, and to prevent the discharge of said noxious gases into the atmosphere." In one embodiment described in the patent specification, the hood is provided with a "port" that "serves to admit outside air," see fig. 4; col. 4, ll. 37-39, and the hood is "coupled to a suction pump which acts to draw the noxious gases" from the hood region, col. 3, ll. 11-14; col. 4, l. 55.[2] Such apparatus could not operate as described if the hood were completely sealed and impervious to gas flow. The patent discloses that alternatively the hood may be sealed and a chemical oxidant introduced therein to react with the noxious gases, or the hood may be sealed and provided with a material to absorb the gases. Col. 3, ll. 56-64.[3] Thus the claim language "confined region" is clearly described in the patent as one which need not be completely sealed; the extent of confinement is dictated by the disclosed alternative means for treating the captured gases.
 
 
 13
 We are able to discern from Delta's somewhat confused arguments that as support for construing "confined" as meaning completely sealed it relies primarily on the deposition testimony of the inventor. The inventor was asked what the term "confined region" means "[a]s used in the patent or anywhere in this room." The inventor responded, "There are impervious--there are barriers impervious to gas flow in all dimensions."[4] The district court also relied on the inventor's deposition testimony because it found the claimed hood "impervious to the flow of gases in all dimensions." Even if this testimony is fully credited in favor of Delta, however, it does not control the construction of claim 1, for the post hoc litigation testimony of the inventor cannot contradict the clear disclosure in the patent document. Senmed, Inc. v. Richard-Allan Medical Indus., Inc., 888 F.2d 815, 819 & n. 8, 12 USPQ2d 1508, 1512 & n. 8 (Fed.Cir.1989). The district court therefore erred in limiting "confined region" to one which is "completely sealed" because that interpretation of the claims is inconsistent with the patent document.[5] There is no dispute that when Delta's apparatus is in operation, it captures noxious gases in a confined region above the trough defined by the cover and scum baffle, the capture of the gases permitting their treatment and neutralization.[6] Accordingly, the district court clearly erred in finding that the Delta hoods lacked a "confined region."
 
 
 14
 B. Warminster next argues that the district court misconstrued the claim terms "integral" and "side wall" as requiring "one-piece" construction. Warminster argues that, under a proper claim interpretation, the court clearly erred in finding that Delta's hoods are not integral with the scum baffle and do not have a side wall protruding into the settling tank water, and therefore clearly erred in finding no literal infringement.
 
 
 15
 We agree with Warminster that claim 1 is not limited to a hood and scum baffle of "one-piece" construction. Unless the patent or its prosecution history indicates otherwise, words used therein are given their ordinary meaning. Jonsson v. Stanley Works, 903 F.2d 812, 820, 14 USPQ2d 1863, 1871 (Fed.Cir.1990). Citing a dictionary, Warminster defines a scum baffle that is "integral" with the hood as being a "scum baffle that is a part of the hood assembly, essential to completeness." This is consistent with the patent specification which discloses molding the hood in "sections" of fiberglass, col. 4, ll. 31-32, and with asserted claim 2 which depends from claim 1 and specifies a hood "formed by a series of [fiberglass] sections." Finally, the patent in no way requires limiting the meaning of "integral" to one-piece construction.
 
 
 16
 Delta argues that the prosecution history demonstrates that "integral" as used in claim 1 means "one-piece" construction. During prosecution, the examiner rejected a claim drawn to a hood with a side wall which "functioned" as a scum baffle "integral" with the hood, and ultimately allowed the claim when it was amended to recite a side wall protruding into the wastewater "to form" a scum baffle "integral" with the hood. This clearly was a technical rejection based on the presence in the claim of functional language not supported by a recitation in the claim of sufficient structure--in other words, "a scum baffle" itself had to be claimed, not just a side wall "functioning as" a scum baffle. See MPEP Sec. 706.03(c) (1993). Although this transaction during prosecution does support interpreting the patent as claiming a scum baffle structure, it does not in any way support construing the claim as requiring that the scum baffle and hood be "one-piece."
 
 
 17
 Delta also points to several statements made by the current and former presidents of Warminster, to statements allegedly made by the inventor,[7] and to statements in Warminster's technical specifications and sales memoranda as evidence that "integral" means "one-piece." Even if these statements indicate that "integral" may be used to describe devices that are one piece, Delta fails to distinguish between the products made and sold by Warminster and the invention claimed in the '704 patent. The statements primarily relate to Warminster products which, for example, are "integrally molded in one piece" and have a "scum baffle [that] is molded as an integral part of the odor hood." Claim 1 and the specification conspicuously do not say that the scum baffle is "molded" integral with the hood. To the contrary, as discussed above, the patent specification and dependent claim 2 say that the hood may be "molded in sections." The meaning of "integral" as used in claim 1 is "sufficiently broad to embrace constructions united by such means as fastening and welding," In re Hotte, 475 F.2d 644, 647, 177 USPQ 326, 328 (CCPA 1973), as well as single-piece fiberglass molding. Warminster's statements that its one-piece commercial products are its "patented" products do not limit the meaning of "integral" as used in claim 1. Accordingly, the district court erred in holding that claim 1 requires a hood and sidewall scum baffle of one-piece construction.
 
 
 18
 Notwithstanding this error, the patent, prosecution history, and extrinsic evidence demonstrate that the patent literally claims an apparatus in which the hood and scum baffle have a structural relationship. See col. 2, ll. 49-52 ("With the present invention there is no need for separate baffle plates; for the hood which acts to confine the gases has a baffle integral therewith." (emphasis added)). The district court found not only that Delta's scum baffle and hood are "two-piece[s]" but also that they are "separate and distinct" and that they "are not structurally tied together," findings which are not disputed. Accordingly, the district court did not clearly err in finding that the "integral" and "side wall" limitations of claim 1 were not literally present in the accused Delta hoods.
 
 
 19
 C. Warminster also argues that the district court clearly erred in failing to find infringement under the doctrine of equivalents. Under the doctrine of equivalents, an accused device may be found to infringe a patent although it avoids the literal language of what is claimed. "An accused device may infringe a claim under the doctrine of equivalents if it performs substantially the same overall function or work, in substantially the same way, to produce substantially the same overall result as the claimed invention." Dolly, Inc. v. Spalding & Evenflo Cos., No. 93-1233, slip op. at 4 (Fed.Cir. Feb. 8, 1994) (citing Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 608 (1950)). "To be an equivalent, the element substituted in the accused device for the element set forth in the claim must not be such as would substantially change the way in which the function of the claimed invention is performed." Id. at 4-5 (quotations and alterations omitted).
 
 
 20
 According to Warminster, Delta's hoods, like the claimed hood, result in the prevention of noxious gases generated in wastewater treatment from being discharged into and fouling the atmosphere. Warminster asserts that Delta's apparatus accomplishes this result by using a scum baffle and trough cover, separated by a 1/8 inch gap and coupled to a suction system, to enclose the trough area in order to trap gases therein and transport them out using air flow. As discussed above, the district court's finding that Delta's hoods are substantially different from the claimed hood was premised on an erroneously narrow interpretation of what the claimed hood is. Specifically, the court found that Delta's hoods operated in a substantially different way from a sealed-hood apparatus. That Delta's hoods are substantially different from a sealed hood apparatus is irrelevant because, as we have held, the hood claimed in claim 1 of the '704 patent is not limited to a sealed or one-piece hood. Thus the findings of the district court as to whether the accused hoods are the substantial equivalent of the claimed hood are not related to the claimed invention and they must be rejected. Consequently, we vacate the finding of no infringement under the doctrine of equivalents, and remand the case for findings and conclusions as to infringement under the doctrine of equivalents based on the proper claim construction set forth in this opinion. Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc., 796 F.2d 443, 450, 230 USPQ 416, 421 (Fed.Cir.1986) (finding of noninfringement vacated where legally erroneous claim construction entirely distorted the infringement analysis).[8]
 
 III.
 
 21
 Finally, Delta argues in its cross-appeal that the district court erred in holding that the patent was not proved invalid. Delta cites a number of prior art references and contends various ones anticipate the claims of the '704 patent under 35 U.S.C. Sec. 102(a), (b), and (g), and would have rendered obvious the claimed subject matter under 35 U.S.C. Sec. 103. Because the district court made no findings in this regard, and in view of our vacatur on the infringement issue, we vacate the judgment as to validity and remand for appropriate findings of fact and conclusions of law. Fed.R.Civ.P. 52(a); see Seattle Box Co. v. Industrial Crating & Packing Inc., 756 F.2d 1574, 1577, 225 USPQ 357, 360 (Fed.Cir.1985); Jones v. Hardy, 727 F.2d 1524, 1529, 220 USPQ 1021, 1025 (Fed.Cir.1984).
 
 CONCLUSION
 
 22
 For the foregoing reasons, we vacate the judgment as to validity and as to noninfringement under the doctrine of equivalents, and remand for such further proceedings as are consistent with this opinion.
 
 
 23
 No costs.
 
 
 
 [1]
 Delta argues that Perini America, Inc. v. Paper Converting Machine Co., 832 F.2d 581, 584, 4 USPQ2d 1621, 1624 (Fed.Cir.1987), requires us to hold that any in-court disagreement by the patent owner and accused infringer as to the meaning of language that the inventor used and that the Patent and Trademark Office permitted to be used in the claims of the patent document in and of itself creates a question of fact that must be reviewed for clear error. We reject Delta's argument for the reasons stated by this court in Johnston v. IVAC Corp., 885 F.2d 1574, 1579-80, 12 USPQ2d 1382, 1385-86 (Fed.Cir.1989)
 
 
 [2]
 Asserted claims 6 and 11, which depend from claim 1, are expressly directed to the unsealed hood apparatus
 
 
 [3]
 Claims 7-10, which depend from claim 1, are directed to the sealed hood apparatus. These claims have not been asserted by Warminster
 
 
 [4]
 At trial, the inventor testified that the term "confined region" as used in the patent was not so limited
 
 
 [5]
 Delta also cites to less-clear statements by the current and former presidents of Warminster as indicative of the meaning of "confined region." These statements do not control the meaning of the claim language for the same reason that the inventor's statement does not
 
 
 [6]
 E.g., "Delta's covers (if used with suction) confine by means of drawing air from the surface of the pond through the gap." Reply Br. for Delta at 11 (emphasis added). Although Delta attempts to emphasize that it is the "air gap" (in conjunction with the hood) which confines gases in its hood, it is of course impossible for a "gap" alone to confine anything
 
 
 [7]
 Because we reject the statement of the inventor as controlling, we need not pass upon Warminster's hearsay challenge to the district court's admission of this statement over Warminster's objection
 
 
 [8]
 Delta further argues that some of the accused devices do not have the "treating means" of claim 1 and therefore do not literally infringe. The district court made no determination in this regard, and therefore we leave the matter for remand if need be